## Commonwealth ex rel. Sheeler v. Burke.

*Louis B. Schwartz* and *Raymond J. Bradley,* for Petitioner.

*John H. Maurer,* District Attorney and *James W. Tracey, Jr.,* First Assistant District Attorney, for Commonwealth.

OPINION BY MR. JUSTICE JONES, March 29, 1951:

Rudolph Sheeler, the relator, filed his original petition with this court for a writ of habeas corpus on the ground that he was being illegally restrained of his liberty in the Eastern State Penitentiary as a result of a life sentence imposed upon him by the Court of Oyer and Terminer of Philadelphia County on March 31, 1939, following his plea of guilty to an indictment (No. 574, March Sessions 1939, in said court) charging him

with the murder of James T. Morrow, a police officer of the City of Philadelphia, on November 23, 1936, in Northeast Philadelphia. The petitioner alleges that his plea and confession of the crime charged in the indictment were obtained and used in violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States and of Article I, Section 9, of the Constitution of Pennsylvania. We entered a rule to show cause why the prayer of the petition should not be granted on the district attorney of Philadelphia County who duly filed a responsive answer.

The petition and answer raised such important issues of material fact (for the resolution whereof on testimony taken at a hearing an appellate court lacks the requisite facilities) that we referred the matter to Honorable LOUIS E. LEVINTHAL, a judge of the Court of Common Pleas of Philadelphia County, for the purpose of holding a hearing on the issues framed by the petition and answer with notice to all interested parties; the order further directed that a record of the hearing, including a transcript of the testimony taken, together with the hearing judge's findings of fact on the issues raised be returned to this court. Judge LEVINTHAL ably and thoroughly performed the duties imposed upon him by our order of reference and the matter is now before us for final disposition. The findings of the learned referee are, however, purely advisory. The instant petition is peculiarly a matter for this court's action in the exercise of our original jurisdiction which, by reason of the unusual circumstances pleaded, we invoked at the instance of the relator. The services performed by the referee were in aid of our discharge of our duties in the premises.

From the findings of the referee, who heard and saw the witnesses, we summarize and adopt the following

salient facts and conclusions which are amply supported by substantial evidence.

Sheeler was taken into custody by the police of Philadelphia on February 16, 1939, on suspicion of having participated with a confederate, one Howard, in the murder of Officer Morrow. He was held by the police incommunicado in City Hall under a fictitious name which they intentionally gave him. He was subjected to coercion, both physical and psychological, in an effort to force from him a confession that he had been a participant in the Morrow murder. During the time he was so held by the police, he was denied opportunity to communicate with family or friends and was taken from his cell-room many times for questioning by detectives for a total of 45 to 50 hours within the first week. At the end of that period, to wit, on the morning of February 23, 1939, he orally "confessed" that he was with Howard when the Morrow crime was committed. A little later the same morning, he signed a statement in which he vaguely narrated the commission of the crime. He was given a hearing before a magistrate on February 24th where he denied that his "confession" was voluntary. He was held without bail for further hearing on the representation of the detective in charge that additional time was required for investigation and, thereupon, was recommitted to the custody of the police. Later that day (February 24th), he signed a statement in which he repudiated his earlier public assertion that the "confession" was involuntary.

On March 24, 1939, the relator was arraigned on various bills of indictment for the crimes covered by the "confession", including indictment No. 574 for the Morrow murder, whereto he pleaded guilty. He was not represented by counsel at the time of his arraignment and pleas.

On the same day (March 24, 1939), Sheeler signed and swore to an "affidavit of destitute circumstances and request to assign counsel" under the Act of March 22, 1907, P.L. 31, Sec. 1, 19 PS §784. The court subsequently assigned him counsel who were notified of their appointment about noon of March 28th, the day before the court hearing for determining the degree of the murder "confessed" and fixing the penalty. The court-appointed counsel mistakenly believed that Sheeler's "confession" and pleas of guilty were voluntary as he himself confirmed to them. They, therefore, did not consider it necessary or desirable to ask for a continuance of the hearing in order to examine into the "confession" or to investigate the underlying facts.

The following morning, March 29, 1939, a hearing on indictment No. 574 for the murder of Officer Morrow was had before the court en banc. The "confession" of February 23rd was offered in evidence and attached to the record. Sheeler also testified in support of the "confession". Several discrepancies in the evidence were noted by one of the members of the court en banc. After the hearing, the police retained their custody of the accused and on March 31st a final "confession" was obtained from him whereby the discrepancies above-mentioned were eliminated. The court then adjudged Sheeler guilty of murder in the first degree and sentenced him to imprisonment for life in the Eastern State Penitentiary to which he was transferred and where he is now held.

The accused's plea to the indictment for murder and his self-incriminating testimony, as well as the "confession", were the result of coercion, subtly and psychologically exerted upon him by the attendant and ever-present police in whose exclusive custody he was from the day of his apprehension (February 16, 1939)

to the time of his commitment to the Eastern State Penitentiary on April 1, 1939.

The question involved is not whether the relator was guilty or innocent of the murder charged against him but whether his conviction was obtained by violating his constitutional rights. As has long been recognized, a petition for habeas corpus is incapable of performing the functions of a writ of error or appeal: *Passmore Williamson's Case*, 26 Pa. 9, 17; *Commonwealth ex rel. McGlinn v. Smith*, 344 Pa. 41, 47, 24 A. 2d 1, and cases there cited. We take occasion to note in passing that no comparison is to be drawn between the instant application for habeas corpus and the extraordinary remedy of a motion for a new trial, nunc pro tunc, which we heretofore accorded the relator at his instance under the Act of April 22, 1903, P.L. 245, Sec. 1, and which was ultimately ruled against him.

We are unanimous that the relator's conviction of the murder of Officer Morrow was had without due process of law and that, consequently, the sentence imposed upon him and his plea of guilty on March 24, 1939, to the indictment charging him with that murder cannot be upheld. (1) The arraignment of and acceptance of a plea of guilty from an uncounseled defendant, charged with a capital crime, constitutes a denial of due process especially where, as here, legal knowledge is required to determine whether the accused is properly chargeable with the alleged crime: cf. *Powell v. Alabama*, 287 U.S. 45, 71. That Sheeler was not represented by counsel when he was arraigned and so pleaded to the indictment for murder is indisputably established by the evidence. Indeed, that fact is expressly conceded of record. (2) The failure of a court to assign counsel timely to a destitute person charged with a capital offense is equally a violation of constitutional due process: see *Powell v. Alabama*,

supra, where it was said at p. 71 that a court's duty to assign counsel for a destitute defendant charged with a capital crime ". . . is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Cf. also *Commonwealth v. Bryant*, at p. 135 ante. (3) A conviction in a capital case based upon a confession or self-incriminating testimony which has been coerced from the defendant by police officers likewise constitutes a denial of due process (e.g., *Turner v. Commonwealth of Pennsylvania*, 338 U.S. 62) which, in the procedural circumstances here present, is remediable by habeas corpus: see *United States ex rel. Innes v. Hiatt*, 141 F. 2d 664, 665-666 (C.A. 3rd Cir.).

The petitioner has met the burden of establishing that he is illegally detained and is, therefore, entitled to relief. But, inasmuch as his guilt or innocence of the crime charged cannot be resolved by this proceeding, we will follow the practice adopted in *Commonwealth ex rel. Townsend v. Burke*, 361 Pa. 35, 42-43, 63 A. 2d 77, and make the following order.

The sentence imposed on the relator by the Court of Oyer and Terminer of Philadelphia County on March 31, 1939, upon indictment No. 574, March Sessions 1939, is hereby vacated and set aside as is, likewise, the relator's plea of guilty to that indictment. It is further ordered and directed that Judge LEVINTHAL'S report be filed as a part of the record in this proceeding at the cost of the County of Philadelphia.