## Commonwealth ex rel. Norman, Appellant, *v.* Banmiller.

Argued November 14, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Christopher F. Edley,* with him *Lewis Tanner Moore,* and *Moore, Lightfoot & Edley,* for appellant.

*Charles Lee Durham,* Assistant District Attorney, with him *Juanita Kidd Stout,* Assistant District Attorney, *James N. Lafferty,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BELL, April 6, 1959:

Petitioner was convicted in May, 1949, on eight bills of indictment charging armed robberies, and was sentenced to 80 to 160 years. On July 1, 1949, he was convicted by a jury of first degree murder occurring during a robbery on March 12, 1949, in which he shot and killed Herman Weintraub, and was sentenced to life imprisonment.

Petitioner on February 10, 1958, applied for a writ of habeas corpus from his conviction of murder alleging (1) that his confession was coerced; and (2) that his trial was so permeated with trial errors that collectively these errors constituted fundamental error amounting to a denial of due process of law.

The Commonwealth filed an answer denying the facts alleged, and averring particularly (a) that petitioner's confession was voluntary, and (b) the question of whether the confession was voluntary or coerced, was submitted to the jury, and (c) that the jury found after hearing voluminous testimony thereon, that the confession was not coerced. The lower Court dismissed the petition for a writ of habeas corpus after hearing argument, but without hearing any evidence.

In *Commonwealth ex rel. Ashmon v. Banmiller,* 391 Pa. 141, 137 A. 2d 236, this Court, speaking through Chief Justice JONES, said (page 144): "The remedy for trial error is by motion for new trial fol-

lowed, if necessary, by an appeal. We, as well as the Superior Court, have frequently recognized that a habeas corpus petition is not available for the correction of trial errors which could have been reviewed and corrected on appeal; it is not a substitute for an appeal or for a writ of error or for a motion for a new trial: Commonwealth ex rel. Marelia v. Burke, 366 Pa. 124, 126, 75 A. 2d 593; Commonwealth ex rel. Ketter v. Day, 181 Pa. Superior Ct. 271, 273, 124 A. 2d 163; Commonwealth ex rel. Jones v. Day, 181 Pa. Superior Ct. 37, 39, 121 A. 2d 896; Commonwealth ex rel. Ruger v. Day, 176 Pa. Superior Ct. 479, 482, 108 A. 2d 818; Commonwealth ex rel. Cobb v. Burke, 176 Pa. Superior Ct. 60, 63, 107 A. 2d 207; Commonwealth ex rel. Sharpe v. Burke, 174 Pa. Superior Ct. 350, 354, 101 A. 2d 397."

However, where the record shows a trial or sentence which was so fundamentally unfair as to amount to a denial of due process, or that some basic fundamental error was committed which deprived defendant of one of his constitutional rights, relief may be sought by habeas corpus: *Commonwealth ex rel. Garrison v. Burke*, 378 Pa. 344, 347, 106 A. 2d 587; *Commonwealth ex rel. Elliott v. Baldi*, 373 Pa. 489, 494, 96 A. 2d 122; *Pennsylvania ex rel. Herman v. Claudy*, 350 U. S. 116, 118; *Palmer v. Ashe, Warden*, 342 U. S. 134. As to what constitutes a denial or violation of due process of law, see *Townsend v. Burke*, 334 U. S. 736; *United States ex rel. Smith v. Baldi*, 344 U. S. 561; *Brown v. Allen*, 344 U. S. 443, 465; *Speller v. Allen*, 344 U. S. 443; *Daniels v. Allen*, 344 U. S. 443; *Watts v. Indiana*, 338 U. S. 49; *Turner v. Pennsylvania*, 338 U. S. 62; *Harris v. South Carolina*, 338 U. S. 68; *Chambers v. Florida*, 309 U. S. 227; *Commonwealth ex rel. Sheeler v. Burke*, 367 Pa. 152, 79 A. 2d 654; *Powell v. Alabama*, 287 U. S. 45.

Under either or both of the aforesaid tests, there is no merit in the applicant's petition.

The principal and real question which petitioner is now raising in this habeas corpus proceeding, viz., the voluntariness or coercion of his confession, was raised by him and was passed upon by the jury adversely to him after hearing conflicting evidence. "When the facts admitted by the state show coercion, Ashcraft v. Tennessee, 327 U. S. 274, a conviction will be set aside as violative of due process. Chambers v. Florida, 309 U. S. 227.": Brown v. Allen, 344 U. S. 443, 475. The facts admitted by the State do not show coercion, and under such circumstances this Court will not re-examine the question of the voluntariness of the confession which was passed upon by the jury adversely to defendant.

This Court pertinently said in *Commonwealth ex rel. Geiger v. Burke,* 371 Pa. 230, 89 A. 2d 495 (page 232) : "The present petition is an attempt to reopen the same question of fact which was resolved against relator by the jury at his trial, and the evidence sought to be introduced in support of the petition is similar in kind to that presented at the trial. We have repeatedly held that the writ of habeas corpus cannot be used to re-examine matters of fact that were passed on by the jury at the trial: Commonwealth ex rel. Carey v. Montgomery County Prison Keeper, 370 Pa. 604, 88 A. 2d 904."

If the law were otherwise, there would be no finality to any conviction or sentence because the person who was convicted and sentenced could file repeated petitions for a writ of habeas corpus raising, in almost identical language, the very issues or matters of fact which were previously decided against him by the jury and/or by this Court and demand and redemand and reredemand the right to present testimony to substan-

tiate his allegations. The orderly administration of law, the protection of Society, and speedy impartial Justice for all, require that the validity and finality of an issue or of a sentence should not be subject to repeated attack after it has once been judicially settled.

Was a hearing necessary in order to determine the factual issues raised by the petition and denied by the answer? The answer to this question is "no", since the facts alleged are refuted by the record, or were found adversely to petitioner by the jury.

In *Commonwealth ex rel. Elliott v. Baldi*, 373 Pa. 489, 96 A. 2d 122, the Court said (pages 494-495): "Where the petition or application itself, or where the record upon which it is based, or both together, fail to clearly make out a case entitling a relator to the relief afforded by habeas corpus, a hearing is not necessary [citing cases]." Cf. also *Brown v. Allen*, 344 U. S. 443.

Petitioner also alleged as error the failure of the trial Judge to provide him with sufficiently astute counsel. The Constitution of Pennsylvania provides in Article I, §9: "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel . . .". Moreover, in a capital case if an accused is financially unable, or for any reason is unwilling or unable to engage counsel, the Court is required to appoint counsel at the expense of the County: *Commonwealth v. Thompson*, 367 Pa. 102, 79 A. 2d 401; *Commonwealth ex rel. McGlinn v. Smith*, 344 Pa. 41, 24 A. 2d 1; Act of March 22, 1907, P. L. 31, as amended by Act of April 6, 1949, P. L. 406, 19 PS 784. See also: *Powell v. Alabama*, 287 U. S. 45; *House v. Mayo*, 324 U. S. 42.

However, the fact that a criminal, after conviction, believes that his trial was not wisely conducted by his

counsel, furnishes no ground for the issuance of a writ of habeas corpus. Were it otherwise, no criminal conviction would be final as long as the defendant had the financial means to engage new counsel who, in the light of hindsight, could astutely point out errors which he believes were committed by trial counsel. In the instant case it is represented to this Court and not denied, that the petitioner engaged and was represented by a reputable and experienced member of the Bar.

One other point remains for consideration. Petitioner alleges that the trial Court erred in receiving testimony concerning defendant's prior criminal record solely for the purpose of determining his punishment. Petitioner's criminal record, i.e., his prior convictions before and after the murder, and the confessions and admissions which were made by him before his trial on the murder indictment, was properly admissible for the sole purpose of enabling the jury to determine defendant's sentence: *Commonwealth v. Petrillo*, 341 Pa. 209, 19 A. 2d 288; *Commonwealth v. Cannon*, 386 Pa. 62, 123 A. 2d 675; *Commonwealth v. Thompson*, 389 Pa. 382, 133 A. 2d 207; *Commonwealth v. LaRue*, 381 Pa. 113, 112 A. 2d 362; *Commonwealth v. Lowry*, 374 Pa. 594, 98 A. 2d 733; *Commonwealth v. Turner*, 371 Pa. 417, 88 A. 2d 915; *Commonwealth v. Simmons*, 361 Pa. 391, 65 A. 2d 353; *Commonwealth v. DePofi*, 362 Pa. 229, 66 A. 2d 649. See also: *Commonwealth v. Darcy*, 362 Pa. 259, 281, 282, 66 A. 2d 663.

We have repeatedly stated that we will not overrule our prior decisions on this point which permit such testimony, believing, as we do, that if the law is to be changed the change should be made by the Legislature: *Commonwealth v. Thompson*, 389 Pa. 382, 401, 133 A. 2d 207; *Commonwealth v. Cannon*, 386 Pa. 62, 64, 123 A. 2d 675; *Commonwealth v. LaRue*, 381 Pa.

113, 120, 112 A. 2d 362; *Commonwealth v. Lowry,* 374 Pa. 594, 603, 98 A. 2d 733; *Commonwealth v. Simmons,* 361 Pa. 391, 401, 65 A. 2d 353; *Commonwealth v. De-Pofi,* 362 Pa. 229, 66 A. 2d 649.

*Pennsylvania ex rel. Herman v. Claudy,* 350 U. S. 116, which is mainly relied upon by defendant, is clearly distinguishable. In that case relator pleaded guilty in 1945 to 8 charges of burglary, 12 of larceny, 8 of forgery, and 2 of false pretense. He was sentenced to serve 17½ to 35 years in the penitentiary. He was 21 years old, he had been to school only 6 years, and he was not represented by counsel. Eight years after his conviction, he filed a petition for a writ of habeas corpus alleging (1) that his pleas of guilty were the result of coercion and threats by State officers; and (2) that at no stage of the proceedings was he advised of his right to or given the benefit of counsel. His petition was dismissed by the hearing Judge without a hearing. The Supreme Court of the United States reversed the Order dismissing his petition on the ground that he was entitled to present evidence to support his allegations, since, if true, they showed that his right to due process had been abridged. The distinction between that case and the instant case is clear. In this case he was represented by reputable counsel, and his testimony that his conviction was obtained by coercion and threats was denied by the Commonwealth's witnesses and was disbelieved by the jury. In the *Herman* case the allegations which were made by relator concerned matters which were dehors the record; whereas in this case defendant's material allegations were refuted by the record and, we repeat, were decided adversely to him by the jury.

We find no trial errors which, singly or collectively, deprived defendant-petitioner of the fundamentals of a fair trial or of any of his constitutional rights.

The Order dismissing petition for writ of habeas corpus is affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Majority Opinion says in this case: "We have repeatedly stated that we will not overrule our prior decisions on this point which permit such testimony, believing, as we do, that if the law is to be changed the change should be made by the Legislature." But repetition and vehemence are no substitutes for reason, justice and fairness.

The defendant was accused of a murder which occurred on March 12, 1949. He was arrested on April 9, 1949, and brought to trial on June 19, 1949. At the trial on the charge of murder the Commonwealth was permitted to show that the defendant committed robberies on March 22, March 26, and April 9, 1949. All these robberies occurred *after* the murder, and had no possible connection with the murder.

The defendant denied that he had committed the murder. He asserted that the confession which was introduced against him had been wrung from him through coercion and physical violence. Under every rule of simple justice, the evidence in the murder case should have been confined to the subject of the murder. Displaying to the jury the indictments returned against the defendant on robbery charges was bound to influence them against him on the charge of murder.

The whole genius of our criminal procedure is based on the fundamental proposition that irrelevant subjects should not be allowed to confuse the main issue before a jury. No objection is more frequently used in our trials than the one that the proposed query is irrelevant. No prosecuting attorney, in presenting his evidence in any given case, is allowed to raise a

shotgun in firing at the target of guilt. He is restricted to a precision rifle which must hit the bull's-eye of truth on the specific crime with which the defendant stands charged.

But in the case before us for consideration, the Trial District Attorney employed a scatter-gun which could not help but hit some vulnerable point in the jury's deliberations on the defendant's case. It would be almost impossible for the defendant to overcome the impression conveyed to the jury that if the defendant committed several robberies after a murder of which he was accused, he had to be the kind of a man who would commit the murder too. It is because of this recognized weakness in human nature, of charging a specific fault because of a general fault, that we have so many rules in trial procedure to keep out hearsay, exclude incompetent testimony, and reject irrelevant evidence.

How can a Court, in the face of these ironclad rules, admit evidence of crimes in no way associated with the particular crime on which the defendant is standing trial? The Trial Court said, and now this Court also says, that the evidence on the robberies was not introduced to show that the defendant was a vicious and bad person and therefore likely to commit murder. It was introduced to show that if guilty of murder he should be put to death because he was so vicious and bad that he also committed robberies!

In the case of *Commonwealth v. Thompson*, 389 Pa. 382, from pages 405 to 429, I traced the history of the error made by this Court, and persists in to this day, in asserting that in a murder trial the Commonwealth may speak of independent crimes for the purpose of augmenting the penalty to be inflicted on the defendant. In that case the Commonwealth was allowed to show that nine years prior to the alleged commission

of a murder the defendant had been convicted of felonious assault and battery and that seven years before the trial, while in the army, he had been brought before a court martial trial and disciplined.

I said in my Dissenting Opinion in that case: "Now that this Court has apparently thrown open the floodgates on all trivial as well as serious offenses of an accused's past, it is possible for an innocent man to be sent to the electric chair not on the evidence of murder but because of the suit of peccadillos which the prosecution forces him to wear. No other State permits so bizarre and tragic a performance. Nothing in history since Justinian, nothing in all the logic of Aristotle, nothing in the mathematics of Euclid, nothing in the science of Newton and Einstein can justify so un-American, so unjust, and so unreasonable a procedure."

The decision of this Court in the *Thompson* case was insupportable enough in allowing evidence of independent offenses committed in the past. But this decision is even more insupportable in law and logic. This decision allows proof of offenses committed *in futuro*, that is, *after* the happening of the event which is the subject of the trial. This contradicts every rule of relevancy, it ignores every standard of competency, it strikes down centuries-old safeguards erected in behalf of the accused. We have always looked with horror upon ex post facto laws. To punish a man for an act which, when committed, was not part of the criminal code, is flagrantly unjust, but this decision goes further. This decision permits punishment for a crime which was not even committed at the time of the offense for which the accused is arrested. This is ex post factoism in reverse!

The Majority Opinion says arbitrarily that this Court will not overrule prior decisions of this Court

on the subject, but it does not say that the prior decisions were correct. In fact, the Majority Opinion writer himself said in the case of *Commonwealth v. Lowry*, 374 Pa. 594, 603, that "many Judges, including the writer of this opinion, believe that a record of prior crimes should not be admissible even under the theory of aiding the jury in fixing the penalty as permitted by the Act of May 14, 1925, P. L. 759." The present Chief Justice, in his Dissenting Opinion in the case of *Commonwealth v. DePofi*, 362 Pa. 229, 251, said: "The thing [introduction of a previous criminal record] could, and no doubt has, actually worked out in practice in a truly shocking way. It is not beyond the range of possibility that where, upon a trial for murder, the defendant's guilt is doubtful under the evidence, the balance may be tilted in favor of a conviction because of the subconscious effect of the impression made on the minds of the jury by the evidence of the defendant's prior criminal record."

I doubt that the other Justices of this tribunal applaud the practice which Justice BELL does not like, which Chief Justice JONES has condemned, and which I abhor, but still it goes on uncorrected. Why? The Majority Opinion says that the correction can only be made by the Legislature, but it was not the Legislature which made the error. The error was perpetrated by this very Court. In 1928, Chief Justice VON MOSCHZISKER led this Court astray in the case of *Commonwealth v. Parker*, 294 Pa. 144, when he said that the Act of 1925 gave to the juries the same power exercised by judges in considering the past record of convicted criminals. The Act of 1925 merely said: "Every person convicted of the crime of murder of the first degree shall be sentenced to suffer death in the manner provided by law, or to undergo imprisonment for life, at the discretion of the jury trying the case, which

shall fix the penalty by its verdict." It will be noted that the Act says absolutely nothing about investing juries with the same authority exercised by judges in studying a defendant criminal's past. Chief Justice VON MOSCHZISKER read into the Act something which was not there, which was not contemplated by the Legislature, and which is contrary to the most fundamental concept of restricting a jury trial to but one issue, namely, innocence or guilt of the defendant.

In 1932, after Chief Justice VON MOSCHZISKER had led the Court away from the highway of traditional and constitutional trial practice, Chief Justice KEPHART took the Court deeper into the woods of irresponsible and illogical procedure by declaring, in the case of *Commonwealth v. Williams*, 307 Pa. 134, that the jury was to consider the defendant's prior record for the purpose of determining "aggravation of the penalty."

Still later, in May, 1949, Chief Justice MAXEY, without compass or direction, struck further into the trackless forest and there erected his camp of confusion, by his Opinion in the case of *Commonwealth v. DePofi*, 362 Pa. 229. Just two years before the *DePofi* decision, the Legislature, having noted the shambles this Court had made of the Act of 1925, specifically declared by the Act of July 3, 1947 (P. L. 1239) that: "In the trial of any person charged with crime, no evidence shall be admitted which tends to show that the defendant has committed, or has been charged with, or has been convicted of any offense, other than the one wherewith he shall then be charged, or that he has been of bad character or reputation." (There are three exceptions which are not involved here.)

Chief Justice MAXEY found no difficulties in disposing of this solemn utterance of the General Assembly of the Commonwealth of Pennsylvania, designed

to safeguard the constitutional rights of the accused. He took down his blunderbuss and blasted away. He said that the Act of 1947 was ambiguous. He spoke of conjunctions, restrictive conjunctions, categorical imperatives, and semicolons in the Act but said nothing about constitutional guarantees. He found that the title to the Act of 1947 was "hybrid" and that the admission of evidence was not germane to the subject of cross-examination. He found many reasons to load and re-load, fire and re-fire his blunderbuss until the Act of 1947 was in shreds.

The Majority Opinion here says that the Legislature should pass an Act, but we have seen what happened to the Act the Legislature did pass on this very subject. It is not the Legislature that should pass remedial legislation; it is this Court which should render a remedial decision. It was this Court which took the subject into the sylvan labyrinths of illogicality, complexity, and injustice; it is, therefore, up to this Court to bring it back to the highway of logic, order, and justice. This Court should declare that the legalistic safaris of VON MOSCHZISKER, KEPHART, and MAXEY were but private adventures of their own. This Court should declare that the Act of 1925 meant no more than it said. This Court should dismantle the grotesque superstructure which has been built on the foundation of the simple and straightforward Act of 1925. It should bring juries back to their constitutional duties, unmixed with chores which suggest those of vengeance and retribution.

There is not a single word in all the statute books of Pennsylvania which says that juries shall sit as Saint Peter, *reviewing the whole life of the accused,* to decide whether he is to live or die. The purpose of the Act of 1925 was simply to eliminate the arbitrary imposition of the death sentence in first degree

murder convictions. Its purpose was to let the jury decide whether, once it found the defendant guilty of first degree murder, the penalty should be death or life imprisonment *because of the specific act of murder* of which he stood convicted. The criminal courts of the Commonwealth have not been vested with the powers of eternal judgment. They are to pass on factual questions and decide, from evidence presented in one specific controversy, whether the accused is guilty or innocent of a specific crime. Any departure from that procedure runs counter to the Anglo-Saxon concept of trial by jury.

Something should be done at once to repair the water-tight compartments in the ship of evidence which, so far as the Act of 1925 is concerned, were severely battered by VON MOSCHZISKER, KEPHART, and MAXEY. However, it would appear that no one desires to undertake the necessary carpentering job. I believe that there is an obligation on this Court to renounce bad decisions of the past. I believe that there devolves upon it a duty to bring trial in murder cases back to what it was before the enumerated three eminent jurists confused the subject by acting as a super-Legislature.

During the argument in the *Thompson* appeal, one of the Justices said that to order a new trial in that case would be an incongruous decision because other defendants had been convicted by the introduction of the same kind of past record evidence. In other words, the Court was arguing for consistency, but consistency is a jewel only when it adheres to the directions of a reliable compass. No one should try to be consistent with the workings of a smashed weather machine. I do not believe that because the Court has erred in the past there is virtue in repeating the same error. A sign post which points in the wrong direction should be turned around and not followed over a cliff.

I said in the *Thompson* case and I will say today that the piling of error upon error does not finally add up to infallibility. And until this Court corrects the error of the past in mis-reading, mis-interpreting, and mis-applying the Act of 1925 I shall continue to dissent each time the subject comes before us.