Commonwealth *v.* McCoy, Appellant.

24

Argued April 18, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused August 9, 1961.

J. *Charles Short,* with him *Israel Stiefel,* for appellant.

*Arlen Specter,* Assistant District Attorney, with him *William H. Wolf, Jr.,* and *Richard A. Sprague,* As-

sistant District Attorneys, *Paul M. Chalfin,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, July 18, 1961:

Gaetano Sabelli, the owner of a grocery store in Philadelphia, was shot and killed by the defendant, McCoy, during the course of his armed robbery on the premises on July 1, 1957. McCoy was indicted for murder for the felonious killing and was tried under the so-called "Split-Verdict Act" of December 1, 1959, P. L. 1621, amending Section 701 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4701 (Pocket Part).[1] At the trial of the issue of the defendant's guilt or innocence of murder, the jury returned a verdict of guilty of murder in the first degree. As required by the "Split-Verdict Act", the court then entered upon a hearing with respect to the penalty to be imposed on the verdict, at which hearing the jury received additional evidence on the question of the penalty to be imposed on the convict, as between death and life imprisonment. The jury fixed the penalty at death. Following denial by the court en banc of defendant's motion for a new trial, judgment of sentence was entered on the verdict, from which the defendant took this appeal.

That the appellant is guilty of murder in the first degree is conceded and no trial error on the question

---

[1] The appellant had been previously tried for the same crime before the passage of the "Split-Verdict Act", on which occasion the jury found him guilty of murder in the first degree and fixed the penalty at death. On appeal to this court from the judgment of sentence, he was granted a new trial on the grounds that the instructions to the jury were prejudicial and that the trial judge had taken an unduly active part in the trial of the case. See *Commonwealth v. McCoy,* 401 Pa. 100, 162 A. 2d 636 (1960).

of his guilt or innocence is assigned. He alleges, however, that on the question of penalty the trial was infected with prejudicial error because the victim of a prior armed robbery, to which the defendant had pleaded guilty, was permitted by the court to testify concerning the circumstances of that crime and, also, because the trial judge, in his charge on the question of penalty, instructed the jury to consider the possibility of defendant's rehabilitation.

The "Split-Verdict Act" provides in material part as follows: "In the trial of an indictment for murder, the court shall inform the jury that if they find the defendant guilty of murder in the first degree, it will be their further duty to fix the penalty therefor, after hearing such additional evidence as may be submitted upon that question. Whenever the jury shall agree upon a verdict of murder of the first degree, they shall immediately return and render the same, which shall be recorded, and shall not thereafter be subject to reconsideration by the jury, or any member thereof. After such verdict is recorded and before the jury is permitted to separate, the court shall proceed to receive such additional evidence not previously received in the trial as may be relevant and admissible upon the question of the penalty to be imposed upon the defendant, and shall permit such argument by counsel, and deliver such charge thereon as may be just and proper in the circumstances. The jury shall then retire and consider the penalty to be imposed and render such verdict respecting it as they shall agree upon."

The Commonwealth's evidence on the question of penalty included a reading of three bills of indictment based on an armed robbery committed on June 15, 1950, to all of which indictments the defendant had pleaded guilty. This evidence was followed by the oral testimony of the victim of the prior and unassociated robbery which had taken place in an Army-Navy store

where the witness was then working. The witness described in detail the defendant's conduct as to how he had posed as a customer desiring to purchase gloves and, while being waited upon, had drawn a gun on the witness whose hands he had tied together and that the defendant then proceeded to empty the cash register; thereafter, in an effort to get more money, he gave the victim rough physical treatment by knocking him over a bed standing in an upstairs room, where he had been pushed by the defendant, and by hitting the victim on each side of the head with the butt of a gun.

Following enactment of the Act of March 15, 1911, P. L. 20, 19 PS §711 (dealing with admissibility of evidence at criminal trials), but prior to enactment of the Act of May 14, 1925, P. L. 759 (placing upon the jury the duty of fixing the penalty between death and life imprisonment upon a conviction of first degree murder), the Commonwealth was precluded from introducing in a criminal trial evidence of the defendant's prior convictions of dissociated crimes. Until the passage of the Act of 1925, supra, a conviction of first degree murder had automatically carried with it the death penalty. In interpreting the Act of 1925, this court announced in *Commonwealth v. Parker*, 294 Pa. 144, 143 Atl. 904 (1928), that evidence of convictions of prior crimes should be admitted at the trial of capital cases as an aid to the jury, should it find the defendant guilty of murder in the first degree, in fixing the penalty to be imposed upon him as between death and life imprisonment, subject, however, to the precaution that the jury be expressly instructed not to consider the evidence on penalty (i.e., prior unrelated convictions) unless and until the defendant was found guilty of first degree murder. Although the ruling has been severely criticized from time to time by members of the bench, the bar, law reviews and text writers on the ground that it is impossible by a mere cautionary

instruction to the jury to obliterate from the minds of its members the prejudicial impressions registered by the introduction of evidence concerning prior dissociated criminal conduct of the defendant, the decision in *Commonwealth v. Parker* has been uniformly followed by this court.

To overcome the objections to the *Parker* rule, the legislature, in 1959, passed the "Split-Verdict Act", so called. The purpose of the Act is to insure that the defendant in a murder case will be tried on the issue of his guilt or innocence of the crime charged, free from any possible prejudicial effect which might arise from the introduction in evidence of his past unrelated criminal record. This was to be achieved by postponing the introduction of such record in evidence until after the jury has determined, in case it did so, that he is guilty of murder in the first degree. That is what the Act of 1959 was intended to effect and that is what it has accomplished.

The prosecuting attorney contends, however, that the Act was also intended to enlarge the rules of evidence on the question of penalty in murder cases, where the defendant is found guilty of murder in the first degree, and cites numerous cases of this court wherein it has been said that the jury, in such instances, is entitled to receive evidence concerning "what manner of man" the defendant is in order to better determine whether he should be sentenced to a term of life imprisonment or should suffer the death penalty. The phrase, "what manner of man", which appears to have been first employed in like context in *Commonwealth v. Dague*, 302 Pa. 13, 14, 152 Atl. 839 (1930), was a mere figure of speech used to connote succinctly what the evidentiary rule of the *Parker* case embraced. The expression was never intended to expand the decision in the *Parker* case with respect to the range of evidence admissible on the question of penalty in first degree murder cases.

If it were necessary to construe the "Split-Verdict Act" in the manner which the district attorney urges upon us, it would obviously be unconstitutional. It is plain enough that the subject of evidence is not only not "clearly expressed" in the Act's title, as required by Article III, §3, of the State Constitution, but it is not even hinted at. The title in full reads as follows: "An Act Amending the act of June 24, 1939 (P. L. 872), entitled 'An act to consolidate, amend and revise the penal laws of the Commonwealth,' changing the method for determining the penalty to be imposed for the crime of murder of the first degree." It actually amended Section 701 of The Penal Code relating to degrees of murder and penalties, but not evidence. All that the amendment was designed to effect was to change the *method* for determining the penalty by having the evidence of the defendant's prior convictions for unassociated crimes excluded at trial until the jury's verdict on the question of the defendant's guilt or innocence was rendered and, upon the jury's finding the defendant guilty of murder in the first degree, the evidence of his prior convictions would then be offered as an aid to the jury in fixing the penalty.

Even if there were any doubt that the legislature did not intend to enlarge the scope of the evidence admissible on the question of penalty, the resolution of such doubt would necessarily result in the rejection of the district attorney's contention. A statute must be construed in such manner, if possible, as to bring it in harmony with constitutional requirements: *Commonwealth ex rel. Dermendzin v. Myers,* 397 Pa. 607, 614, 156 A. 2d 804 (1959); *Parente Appeal,* 390 Pa. 249, 253, 135 A. 2d 62 (1957); *Tremont Township School District v. Western Anthracite Coal Co.,* 364 Pa. 591, 596, 73 A. 2d 670 (1950). In the present instance, that can be done only by construing the Act of 1959 as not intended to change the character of evidence admissible

on the question of penalty after a jury's conviction of a defendant of first degree murder. But, such is, in reality, the clear meaning of the language employed by the legislature. The Act provides that "After such verdict [guilty of murder in the first degree] is recorded and before the jury is permitted to separate, the court shall proceed to receive such additional evidence not previously received in the trial as may be relevant and admissible upon the question of the penalty to be imposed upon the defendant . . . ." The "additional evidence", contemplated by the statute, is such as, prior to the passage of the Act, would have been received during the trial of the issue of the defendant's guilt or innocence of the charge of murder.

The prior law in relevant connection has in no way been changed by the statute. All that can now be shown on the question of the penalty to be imposed upon an adjudicated first degree murderer, concerning his past criminal tendencies, is his prior convictions, confessions or admissions. In *Commonwealth v. John Jones,* 355 Pa. 594, 597, 50 A. 2d 342 (1947), we recognized with approval that "The appellate courts of this Commonwealth have strictly limited the application of this rule of evidence to certain cases involving either *prior convictions* or admissions by accused of the actual commission of other *crimes* and any attempt to extend this principle to include testimony of *mere arrests* is without foundation in either law or reason." In *Commonwealth v. Turner,* 371 Pa. 417, 435, 88 A. 2d 915 (1952), Mr. Justice CHIDSEY, speaking for the court, said, "We think it unwise to alter the rule laid down in Commonwealth v. John Jones, supra, that strictly limits evidence of other crimes on the question of penalty to prior convictions, confessions or admissions." Nor do we have any intention to depart therefrom.

The admission in evidence in this case of the defendant's prior conviction based upon the three indictments charging him with armed robbery, to which he had pleaded guilty, was proper. As to that, the appellant makes no objection. What he does complain of is that the district attorney called the victim of the unassociated prior robbery and had him relate the circumstances attending its perpetration and the force and violence to which the defendant had subjected him in the course of the robbery. This testimony was, of course, improper and should not have been admitted. The introduction of such evidence, if approved, would lead to the injection of collateral and diverting issues, and be bound to produce confusion which could deprive an accused of the orderly trial to which he is entitled and which the Commonwealth should be alert to assure him.

In addition thereto, the evidence at the trial on the question of the defendant's guilt or innocence of Sabelli's murder discloses a heinous and cold-blooded killing by the defendant of a man who had, as McCoy himself admitted, been a good friend to him and very nice to him as an employer. As testified to by the two close-up witnesses at the scene of the crime, both employees of the store, viz., Marie Lawson, the bookkeeper, and Grace Capasso, typist-clerk, Sabelli, who had just entered the store from the rear, seeing what was going on, had raised his hands in surrender, inquiring "What is this, a holdup?" when McCoy, without provocation of any kind, aimed his gun at Sabelli's face and shot him at a range of about 18 inches, killing him "without a chance," as the eyewitnesses testified. It would require a stretch of the imagination beyond all reason to say that the testimony of the victim of the prior unassociated robbery played any essential part in the fixing of the penalty by a jury which had just heard all of the Commonwealth's evidence against the defend-

ant at the trial on the question of his guilt or innocence of the murder and which had found him guilty of that murder in the first degree. The testimony of the witness to the prior robbery was clearly harmless, in contemplation of law, and its admission does not warrant a new trial.

The appellant's remaining assignment that the trial judge erred in instructing the jury to consider the possibility of the defendant's rehabilitation is unmeritorious. The matter complained of came at a time when the court was actually instructing the jury in a manner favorable to the defendant, that the jury was told to consider the possibility of his rehabilitation. The appellant now assigns this as error on the attenuated theory that the instruction "could only suggest to the jury that if life imprisonment were the punishment, the defendant might be returned to society before the expiration of his natural life." The contention is as fanciful as it is specious.

Both of the appellant's assignments of error are, therefore, overruled. So much suffices for the disposition of this appeal.

In regard to the procedure to be pursued at a hearing under the "Split-Verdict Act", there appears to exist among trial judges and counsel a misconception which has been indicated not only by the records in the instant case and in *Commonwealth v. Butler,* 405 Pa. 36, but also by several trials below, whereof we have been informed, but which have not come before us on appeal.

The mistaken procedural situation, thus developing, bids to grow worse rapidly, with the result that, before long, if the threatened procedural errors be not corrected, the "Split-Verdict Act" will soon become a classic illustration of the sage observation that "Striving to better, oft we mar what's well." Witness what the district attorney advances in his brief for the Common-

wealth, viz., that he "has taken the position in murder cases before the trial courts that the entire field of mitigation evidence is fully open for exploration by defense counsel during the separate proceeding on punishment; and that days may be taken, quite literally, by counsel in extensively and exhaustively exploring evidence in mitigation of penalty." The court below, presumably misled by the district attorney's untenable argument, erroneously concluded,—"That there properly should be no limitation as to the evidence which may be offered by the defendant in mitigation of the capital penalty cannot be questioned." In support of his contention, the district attorney cites, and relies upon, an opinion by the Supreme Court of California in *People v. Purvis,* 52 Cal. 2d 871, 346 P. 2d 22 (1959). California, incidentally, is the only other State in the Union which has statutorily provided for a separate hearing on the question of penalty following a conviction of first degree murder. We do not subscribe to the holding of the California case; and we have our own local statute to construe and the responsibility for so doing rests ultimately on this Court.

Accordingly, to the end that a uniform procedure under the "Split-Verdict Act" for the State as a whole may be brought about, we deem it advisable to set down, herein, briefly and as clearly as possible, rules which we unanimously approve and which should henceforth guide a trial court and counsel at a hearing on the question of penalty to be imposed on a jury's verdict of guilty of murder in the first degree.

The hearing on the question of penalty should be entered upon *immediately* following the recording of the jury's verdict, which has found the defendant guilty of murder in the first degree. Any relaxation in the immediacy of the required hearing on the penalty must necessarily rest in an exercise of sound discretion, in the circumstances, by the trial judge. Nor should such

discretion be exercised in favor of any postponement *except* for the most urgent of reasons. The jury is, of course, not to be separated, following the rendition of its verdict of guilt, until discharged by the court after the verdict fixing the penalty has been accepted by the court and duly recorded.

The trial judge should, in as few words as possible, inform the jury at the hearing on the penalty that it is now their duty to fix the defendant's penalty for his guilt of murder in the first degree, and that additional evidence will be presented to aid them in the discharge of that duty. No comment should be made by the court with respect to the evidence to be received; nor should such additional evidence be more than records of prior convictions, confessions and admissions of the defendant as hereinbefore indicated. The only evidence adduceable by the defendant would be such as might impeach the records introduced against him, and such other evidence as is directly, and not collaterally, relevant to the issue of penalty and is not repetitious of any evidence that appeared of record in the trial of the issue of guilt.

After such additional evidence has been received, the court shall, in the words of the Act, permit such argument by counsel and deliver such charge as may be just and proper in the circumstances. The argument of counsel shall, subject always to the discretion of the court, be limited to the relevant and admissible evidence that has been adduced on the question of penalty.

The judgment of sentence is affirmed.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

While I do agree with the procedures clarified and set forth in the opinion of the majority as a guide for

the future, nevertheless I must dissent for other reasons.

It requires no "stretch" of my "imagination" whatsoever to say that the testimony of the victim of the prior unassociated robbery played an essential part in the fixing of the penalty by the jury in the present case. Such testimony is so foreign to my concept of due process and fair play that I cannot gloss over it by dismissing it with the questionable phrase "harmless error." In fact, the whole proceeding indulged in by the Commonwealth in the fixing of the penalty under the "Split-Verdict Act" was erroneous and deprived the defendant of the proper hearing to which he was entitled. Under the circumstances I would treat the errors as if the jury had not been able to arrive at a decision as to the penalty, and would impose life imprisonment as provided for in the Act.

Mr. Justice Bok joins in this dissent.