## Commonwealth ex rel. Reno v. Russell

*Charles M. Marshall,* for relator.

*Clarence D. Neish,* Assistant District Attorney, for respondent.

McCREARY, P. J., September 28, 1961.—Complying with the requirements of rule 43 of the Superior Court of Pennsylvania, this memorandum opinion constitutes a brief statement of the reasons for our order of August 3, 1961, refusing to discharge relator on a writ of habeas corpus.

Relator filed a petition for leave to file and prosecute a petition for a writ of habeas corpus in forma pauperis, and on June 27, 1961, the court ordered that the petition be filed and that relator be released from the said State Correctional Institution at Huntingdon, Pa., into the custody of the sheriff of Beaver County so that he might be transferred to the Beaver County Jail, there to await a hearing on his petition to be held August 3, 1961, at 9:00 a.m. In that same order, the court appointed Charles M. Marshall, Esq., as attorney to represent Frank Reno, petitioner, at the hearing.

On August 3, 1961, the matter came on for hearing before the undersigned, and relator was heard in his own behalf and by his counsel. Many of the bald allegations of fact which he made in support of his petition for discharge on a writ of habeas corpus were not even mentioned by him at the hearing, and some of the allegations are given the lie by the record.

It appears from the record that on January 23, 1955, an information was made against petitioner by the chief of police of the borough of West Bridgewater, charging him with burglarizing the Riverside Super-

market at West Bridgewater on January 20, 1955. A true bill was returned on an indictment by the grand jury at no. 6, March term, 1955, in the Court of Oyer and Terminer of Beaver County, Pa., on March 7, 1955.

The record in the clerk of court's office also shows that on March 10, 1955, Frank Reno made affidavit to the effect that he is without money or assets and to the effect that he cannot pay a lawyer to represent him, and that thereupon, on the same day, the court appointed E. E. Autenreith, Esq., a member of the Beaver County Bar, as his counsel.

The case came on for trial before the undersigned on March 16, 1955, and on March 17, 1955, the jury returned a verdict of "guilty as indicted", the indictment containing three counts charging (1) burglary; (2) larceny; (3) receiving stolen goods. No motion for a new trial was filed and no appeal was taken, and defendant was, on sentence day, sentenced to pay the costs of prosecution, a fine of one dollar and to be committed to the Western Correctional Diagnostic and Classification Center to undergo imprisonment in a State institution for a term of not less than five years nor more than 20 years.

The record shows, and relator so testified, that he was paroled in 1958, and later recommitted for violation of his parole. Later on he was re-paroled, and again he was recommitted for violation of his parole. He is presently in the State Correctional Institution at Huntingdon, Pa.

From the record of his testimony, his complaints may be briefly stated as follows:

1. He says that during the trial he requested, he thinks, Eric Simons, Esq., an assistant district attorney, to have witnesses subpoened for him, but none were furnished. He admits that he never complained about this to the trial judge.

2. He now asserts that he was nervous when he came into the court room, because, he claims, he did not know anything about the law, although he admits that just six months prior to his conviction on the charge we are now reviewing, he had been in court and had entered a plea of guilty to a charge of attempted burglary, on which charge the court suspended sentence and placed him on probation for a period of five years.

3. He now complains that he did not expect to be found guilty, because, he claims, he was not guilty, although the jury found him so from a consideration of the believable testimony.

4. He complains that he had discussed his defense with his court-appointed counsel the day before his trial, and that counsel did not go to the scene of the alleged burglary to take fingerprints, and he complains that his counsel did not have witnesses subpoened for him, although he does not claim that he asked his counsel to do so.

5. He complains that the jury found him guilty as indicted on the three counts as set forth in the indictment, namely, burglary, larceny and receiving stolen goods, but insists that the finding of guilty on the charge of receiving stolen goods is inconsistent with the finding by the jury of guilty on a charge of burglary. He admits that he was sentenced on only one charge, namely, that of burglary. He insists that the trial judge, in his charge, did not tell the jury that they could find him guilty of one count and not guilty on the other counts. Of course, this is not so, but even if it were it would merely constitute trial error and would be no basis for the granting of a writ of habeas corpus six years after his conviction.

6. He complains that no notes of testimony were taken at the trial, but admits that he did not request

that any notes be taken. He complains that he did not know that a trial could be conducted without the presence of a court stenographer, even though no request was made for one by defendant or the Commonwealth. He says that he was not aware that notes of testimony were not taken until he found it out in response to a letter he wrote on October 30, 1960. He says that at the time, he wrote to the clerk of courts for a copy of the notes of testimony he received only a copy of the information and of the indictment. No court, in the trial of a man charged with burglary, larceny and receiving stolen goods, is required by law to have notes of testimony taken by the court stenographer unless a request therefor is made by the district attorney, or the defendant or his counsel.

7. He complains that counsel did not have time to familiarize himself with the case. He says his counsel was appointed the day before the trial, but the record shows that his counsel was appointed a week before the trial. In his petition for writ of habeas corpus, relator states that he requested the court to postpone the hearing before the jury because he had not had time to prepare his defense with his counsel, but at the hearing held August 3, 1961, he did not mention one word about having requested the court for a continuance or about the court refusing to grant his motion for a continuance. The record shows no such request to have been made.

8. He claims that he was disappointed at the outcome of the trial and wanted his counsel to appeal. It should be noted that in the habeas corpus case we are now considering he took his own appeal without the intervention of counsel. There can be no doubt that he would have done the same thing in 1955 if he had thought there was any basis for an appeal. He does not say that anyone interfered with his right to take an appeal in 1955.

9. He denied having committed the burglary, although the jury found that he did commit it. This certainly is no ground for issuing a writ of habeas corpus to discharge the defendant.

It is clear from a reading of the entire record that relator is now disappointed in the result he got from the parole board, which paroled him twice since 1955, but had him recommitted for violation of its parole rules, or for other causes. He now conceives the idea of trying to get released from his sentence by another method, namely, by petitioning the court for a writ of habeas corpus. Although represented at the habeas corpus hearing by competent counsel, he wholly failed to make out a case entitling him to the relief which he seeks.

The fact that a criminal, after conviction, believes that his trial was not wisely conducted by his counsel furnishes no ground for the issuance of a writ of habeas corpus: Commonwealth ex rel. Norman v. Banmiller, 395 Pa. 232.

In the case of Commonwealth ex rel. Haines v. Banmiller, 393 Pa. 439, the Supreme Court held that allegations in relator's petition for a writ of habeas corpus complaining that he was denied, before trial, an opportunity to examine the charge, subpoena witnesses and consult counsel and prepare a defense, and was denied his right to appeal because the trial court failed to furnish him with a transcript of the nonsupport hearing, and that he was found guilty by a prejudiced jury, and was prevented from having a fair trial because the judge was prejudiced and the community feeling was prejudiced, the petition was without merit and the court below properly dismissed it.

We agree wholeheartedly with the statement made by Judge Woodside in the dissenting opinion in the

case of Commonwealth ex rel. Wagner v. Tees, 174 Pa. Superior Ct. 475, where he said (pp. 481, 482):

"This is the second application for a writ of habeas corpus filed by the appellant since his sentence. Hundreds of applications for such writs are being filed by convicted prisoners of this Commonwealth in both state and federal courts. Almost none of these writs is found to be meritorius. Undoubtedly many are filed for the sole purpose of obtaining respite from prison monotony by a trip to the court of sentence, frequently many miles from the penitentiary and usually in the prisoner's home county. The courts, the district attorneys, the Attorney General, and prison officials are all being harassed with a continuous flow of frivolous petitions at a cost to the taxpayers of hundreds of thousands of dollars.

"As a result of reckless charges made in the most general language, prosecuting officials and even judges, find it necessary to testify concerning their official conduct. This leads to the spectacle of the judge who sentenced the convicted prisoner being cross examined by the prisoner he tried and sentenced."

We believe that the foregoing reasons support our order of August 3, 1961, denying the prayer of the relator's petition.