Commonwealth *v.* Bell, Appellant.

Argued November 10, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused April 13, 1965.

*Lester J. Schaffer,* for appellant.

*Gordon Gelfond,* Assistant District Attorney, with him *Joseph M. Smith,* Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 16, 1965:

The appellant, Darryl A. Bell, was convicted by a jury of murder in the first degree. Punishment was fixed at death. Following the denial of a new trial and imposition of sentence in accordance with the jury's verdict, this appeal was filed. It is urged that serious trial errors were committed which require the grant of a new trial.

The undisputed evidence established that on December 22, 1960, Bell entered a grocery store in the Germantown section of Philadelphia, operated by one Herman Rosenberg, with the intention of committing a robbery. He had a loaded P-38 German Walther automatic pistol concealed in the pocket of his overcoat. When caught in the act of stealing money from the cash register, he shot Rosenberg in the right forehead

causing injury from which death resulted in a few minutes. Before fleeing the scene, Bell then stole the remaining money from the cash register, and also a wallet from Rosenberg's person, containing a substantial sum of money.

Bell was arrested by the police on April 20, 1961, for a crime separate and apart from the Rosenberg killing. In searching his apartment, the police found the gun which ballistic tests eventually proved was the Rosenberg death weapon. During the questioning that immediately followed his arrest, Bell admitted to the police that he committed the Rosenberg robbery and killing.

The first assignment of error concerns two statements made by Bell to the police which were recorded on a typewriter. When written, they were given him to read. He initialed every page and signed his name at the end of each statement. The first was made on April 20, 1961, and the second on April 26, 1961. It is admitted that both statements were given voluntarily, and their truthfulness was not refuted or questioned in any manner at trial.

In the statement of April 20th, Bell not only recited the facts concerning the Rosenberg crime, but also told of his participation in other crimes after that occurrence. Therein, he admitted robbing another grocery store, operated by one David Kleeman, with one Bobby Cross on April 7, 1961. In the course of this robbery, Kleeman was hit over the head with a revolver and shot in the arm by Cross. In this statement, Bell also admitted and described his participation in a third armed robbery on April 17, 1961, wherein the owner of a grocery store, Max Kanal, was shot and killed by the same Bobby Cross, with a gun supplied by Bell. The second statement of April 26th dealt only with the Rosenberg case and covered it in greater detail.

During that portion of the trial involving the question of guilt in the Rosenberg homicide, the Commonwealth called police witnesses who testified to the circumstances under which both statements described above were made. The second statement, in its entirety, was admitted in evidence. However, in accordance with the directions of the trial court, only that portion of the first statement dealing specifically with the Rosenberg robbery and killing was read to the jury. On cross-examination of one of these police witnesses, Bell's attorney pressed the witness for the reason he thought it necessary to secure the second statement, in view of the fact that Bell's commission of the crime had already been freely admitted previously. The witness first answered, "This investigation, or the investigation of the homicide of Herman Rosenberg, was assigned to me specifically as a detective in the homicide unit. The statements that had been taken previously incorporated other crimes."

Bell's attorney then persisted in this line of questioning to secure from the witness an explanation as to the necessity for the second statement. Finally, the witness answered, "Because I wanted a separate statement concerning the robbery and homicide of Herman Rosenberg." Then to the question, "Why?" the witness answered, "Because in his original statement in which he admitted his guilt in the Herman Rosenberg killing he also admitted his guilt in the Max Kanal homicide."

Following this last answer, Bell's attorney moved for the withdrawal of a juror which the court denied.[1] This ruling is assigned as error.

A reading of the record is convincing that the answer referring to the Kanal homicide was invited by

[1] However, the court did instruct the jury to disregard the answer complained of and not to permit it to influence them in determining the defendant's guilt in the case on trial.

Bell's counsel and he cannot now complain about that for which he was responsible. See, *Commonwealth v. Duca*, 312 Pa. 101, 165 A. 825 (1933). Moreover, the reference to the Kanal homicide did not, in fact, unfairly prejudice the defendant, as the following will demonstrate.

Bell's counsel admits that his client was guilty of murder in the first degree. He did not contest this finding at trial. His sole aim and hope was to save Bell from the sentence of death. Neither is it now maintained that the answer complained of influenced the jury's determination of guilt or the degree thereof, but rather that it unfairly prejudiced them against him in their decision fixing the penalty for the crime. That it did not do so is evidenced by the fact that, in that portion of the trial for the determination of the penalty, statements of the defendant, admitting his participation in the Kanal homicide and other crimes, were admitted in evidence for the jury's consideration as an aid in fixing the penalty. Obviously, if these admissions were correctly admitted at this stage of the proceedings, the reference to the Kanal homicide during the first stage of the trial was of little moment.

This brings us to the final assignment of error. Did the trial court err in admitting in evidence, solely for penalty purposes, the statements of the defendant describing and admitting his guilt and participation in the other crimes, particularly since these other crimes were committed subsequent to the crime on trial? Our conclusion is definitely not.

This case was tried in accordance with the procedure prescribed in the so-called "Split-Verdict Act" of December 1, 1959, P. L. 1621, §1, 18 P.S. §4701. As we have stated on two prior occasions, this statute did not change the law with respect to the character of the evidence that can properly be introduced on the question of penalty. It merely changes the method or

procedure to be employed in determining the penalty, and precludes the use of evidence of other crimes for penalty purposes until the defendant's guilt of murder in the first degree has first been established. After such a finding, then evidence of the commission of other crimes is admissible as an aid to the jury in fixing the penalty: *Commonwealth v. Coyle*, 415 Pa. 379, 203 A. 2d 782 (1964), and *Commonwealth v. McCoy*, 405 Pa. 23, 172 A. 2d 795 (1961).

How must the commission of these other crimes be proved?

In *Commonwealth ex rel. Norman v. Banmiller*, 395 Pa. 232, 149 A. 2d 881 (1959), following previous decisions of this Court cited therein, we held that such could be shown by the record of his convictions for these crimes or by his confessions and admissions of his guilt therein made before trial. In *Norman*, we specifically held that the record of convictions of other crimes committed *before and after* the crime on trial was proper evidence for this purpose. We see no good reason to limit the use of the defendant's admissions to crimes which were committed prior to the crime on trial, particularly where these admissions were admittedly freely made. That no such limitation should be imposed is dictated by solid and cogent reasons.

When a convicted defendant is called for sentence before a judge or judicial tribunal, every fact that will aid in passing a proper judgment is relevant and should be taken into consideration. And this includes not only the facts of the crime involved, but every bit of available trustworthy and pertinent information that will aid the court in determining the type of individual to be sentenced. And this is mandatory when the decision involves a determination of whether or not the imposition of death is the proper penalty. See, *Commonwealth v. Green*, 396 Pa. 137, 151 A. 2d 241 (1959). In *Green*, this Court specifically held that before the

penalty of death is imposed, the court is required to exhaust every avenue of information to ascertain what type of individual is represented by the defendant. We also said that, in making this evaluation, it is the duty of the court to consider not only the circumstances of the crime itself, but also all evidence *culpatory and exculpatory, incriminating and extenuating, including what manner of man the criminal is and has been.* We further stated that a jury, before making a like decision, should have the benefit of all such evidence and weigh carefully the same factors. That a jury is required to consider what manner of man the defendant is and has been, before imposing the penalty in capital cases, is indicated in many decisions. See, *Commonwealth v. Wooding,* 355 Pa. 555, 50 A. 2d 328 (1947); *Commonwealth v. Stabinsky,* 313 Pa. 231, 169 A. 439 (1933); *Commonwealth v. Dague,* 302 Pa. 13, 152 A. 839 (1930); and, *Commonwealth v. Bentley,* 287 Pa. 539, 135 A. 310 (1926). Certainly, therefore, evidence of defendant's commission of other crimes, consisting of his own freely-made admissions, even though the crimes were committed after the crime on trial, is relevant and an important consideration for the jury in the determination of what manner of man the defendant is on the day the awesome decision must be made as to whether he should live or die.

Judgment affirmed.

Mr. Justice COHEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I have always maintained that it is unfair to hang the client because of the fault of the attorney, and I still so maintain. The Majority Opinion states that the improper statement made by a witness, as to a homicide other than the one for which the defendant was being tried, "was invited by Bell's counsel and he cannot now complain about that for which he was re-

sponsible." Do the two "he's" in this sentence refer to the defendant Bell or to his defense lawyer? If they refer to the defendant, it certainly is not his fault if the attorney used bad judgment. If the two "he's" refer to the attorney, the ruling of the Majority is even worse because it is not the attorney who is going to the electric chair but the defendant. Whatever the attorney complains about, is advanced in favor of the client, so that it is absurd to say that the attorney is "responsible" for the error. For the attorney, this is only another case, but for the defendant it is his only life.

I dissent for another reason. The so-called "Split Verdict" Act of December 1, 1959, was never intended to make of the jury a conclave of St. Peters, to decide whether a defendant should live or die on the basis of *all* the sins in his life, including those which happened *after* the only offense for which he is on trial. The Act of 1959 was intended to leave to the jury whether, after finding the defendant guilty of murder in the first degree for *one specific homicide,* they believe, in their best judgment and according to their conscience, the punishment should be life imprisonment or death. Bell was tried for only one murder, the Rosenberg murder. The Majority in its opinion speaks as if he had also at some time been found guilty of murder in the Kanal homicide. This, of course, is not so. Bell's admission of "participation in the Kanal homicide" did not make him guilty of the Kanal killing. It is hornbook law that a confession, without other corroborating evidence, is worthless in the establishing of guilt. Thus, the jury were allowed to pass on the life of the defendant, not because he killed one man, but because he killed two men. And there was no proof at all that he killed a second man.

Going back to the error of allowing a reference to the Kanal homicide during the trial on the Rosenberg murder, the Majority says that "if these admissions

were correctly admitted at this stage of the proceedings [that is, after the jury's verdict of guilty on the Rosenberg murder], the reference to the Kanal homicide during the first stage of the trial was of little moment." This is strange logic indeed. The fact that the error was repeated a second time does not wipe out the first error. Who can say that the jury was not prejudiced against the defendant in finding him guilty of the Rosenberg murder, when they were informed, while considering him only for the Rosenberg murder, that he had also participated in the killing of still another man, Kanal?

It becomes more and more of a perplexity to me why prosecuting officials insist on jeopardizing a perfectly good case, by introducing irrelevant evidence. It is equally an enigma why a presiding judge, when improper evidence, of a serious and grave character (as the reference to the Kanal homicide unquestionably was), is introduced, does not declare a mistrial right then and there. And start de novo. As horrible as was the initial crime in this case, it does not help society to deny the defendant due process of law and to let him go to his death with a hovering doubt as to whether he was not denied the fair trial, which our institutions, our laws, and our Constitutional guarantees demand.