Commonwealth ex rel. Elliott, Appellant, *v.* Baldi.

Argued November 20, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Barnie F. Winkelman,* with him *William R. Pomerantz,* for appellant.

*Michael von Moschzisker,* First Assistant District Attorney, with him *Samuel Dash,* Assistant District Attorney and *Richardson Dilworth,* District Attorney, for Superintendent, Philadelphia County Prison, appellee.

*Randolph C. Ryder,* Deputy Attorney General, with him *Frank P. Lawley, Jr.,* Assistant Deputy Attorney General and *Robert E. Woodside,* Attorney General, for Warden, Western State Penitentiary, intervening appellee.

OPINION BY MR. JUSTICE BELL, April 14, 1953:

It will aid in a proper understanding and determination of this appeal if we briefly review some of the facts and some of the issues which are fully set forth in our opinion in *Commonwealth v. Elliott,* 371 Pa. 70, 89 A. 2d 782.

Elliott ruthlessly shot and killed a policeman during a robbery. He pleaded guilty to murder and a three Judge court found him guilty of murder in the first degree. Elliott's counsel, whose industry and zeal in his behalf have been remarkable, obtained the appointment (by the trial Court) of Dr. Drayton, a psychiatrist, and presented to that Court Elliott's history and background from a very early age. Elliott and his counsel have continuously, consistently and unqualifiedly *admitted* that the killing was first degree murder and *that he (Elliott) was and is sane,* but allege that he was and is an irresponsible moron or mental defective and consequently should have been sentenced to life imprisonment instead of death.

After a careful study of all the evidence, including Elliott's history from his early youth, the Court below, in a very able and persuasive opinion, imposed the death sentence. Thereafter Elliott's counsel discovered that Dr. Drayton, the court-appointed psychiatrist, had himself been committed as of January 12, *1952,* because of an incurable mental disease which was progressive and which had deprived him of any judgment or insight. The commitment proceedings had been brought by Dr. Drayton's wife on or about *September 18, 1951.* These facts were contained in an affidavit by Thomas D. Mc-Bride, Esq., which was filed in *U. S. ex rel. Smith v. Baldi,* 344 U. S. 561.

At the oral argument of Elliott's appeal before this Court in the prior case of *Commonwealth v. Elliott,* permission to file the McBride affidavit was requested and granted. Dr. Drayton's reports of his examination of Elliott in 1938 and also on *July 3, 1950,* stated that defendant was a middle grade moron and a mental defective who was, however, a shrewd fabricator. *The case was unusual* in that all of the psychiatric and similar history with respect to the mental condition of the defendant from the time he was 10 years old are in substantial and practically unanimous agreement, viz., that the defendant was an aggressive, unstable, dangerous moron who was mentally defective. The important fact to note and remember throughout the present case is that experts and laymen all agree (1) that defendant was sane, and (2) that he was a moron and mentally defective. We decided that this was a factor to be taken into consideration in determining and fixing a sentence, but did not require the imposition of a life sentence instead of death.

In that case we very carefully considered all points raised by the defendant—including the aforesaid affi-

davit of McBride,*—and decided there had been no abuse of discretion in fixing the sentence of death, and affirmed the judgment and sentence of the lower Court: *Commonwealth v. Elliott,* 371 Pa., supra.

Because the point now raised was orally argued and carefully considered by us in the former appeal, we could summarily dismiss the present appeal. However, in view of the fact that a man's life is at stake and in view of the very recent decision of the Supreme Court of the United States in *U. S. ex rel. Smith v. Baldi,* 344 U. S. 561, supra, and in further view of the novel and important questions herein raised, we shall consider the case on its merits.

Elliott's petition for a writ of habeas corpus and rule to show cause in the instant case is based upon McBride's aforesaid affidavit pertaining to the incompetence of Dr. Drayton, which was unknown to the sentencing Court. The petition averred that this incompetence, which was discovered 10 months after Dr. Drayton's last report on Elliott, "constituted a defect or irregularity in the criminal proceedings"; with, we assume, the implication that it amounted to a denial of due process. Relator specifically contends that because of Dr. Drayton's mental condition in September 1951 and January 1952, his opinion of the defendant in July 1950 was worthless, and the sentencing Court was erroneously guided by this worthless opinion and consequently came to an unjust conclusion. The lower Court through one of the sentencing Judges who was thoroughly familiar with Elliott's case, summarily dismissed the present petition and rule for habeas corpus without requiring an answer or a hearing.

The first contention of the Commonwealth is that this question cannot be raised by a habeas corpus ad-

---

* We did not consider the question raised by the McBride affidavit to be of sufficient importance to warrant specific discussion.

dressed to the lower or sentencing Court. The cases are legion in which this Court has said that a writ of habeas corpus is not a substitute for an appeal or for a writ of error or for a motion for a new trial or for the correction of trial errors: *Commonwealth ex rel. Marelia v. Burke*, 366 Pa. 124, 75 A. 2d 593; *Commonwealth ex rel. Smith v. Ashe*, 364 Pa. 93, 71 A. 2d 107; *Commonwealth ex rel. McGlinn v. Smith*, 344 Pa. 41, 24 A. 2d 1. On the other hand, the recent tendency of Courts, especially the Supreme Court of the United States, has been to relax this general rule and to widen the scope of due process and allow a writ of habeas corpus when the interests of justice imperatively require it. See particularly *Townsend v. Burke, Warden*, 334 U. S. 736 and the recent United States Supreme Court cases of *U. S. ex rel. Smith v. Baldi*, 344 U. S. 561; *Brown v. Allen, Warden*, 344 U. S. 443; *Speller v. Allen, Warden*, 344 U. S. 443; and *Daniels v. Allen, Warden*, 344 U. S. 443.

It must be obvious, as well as just, that petitioner should have some redress if he was sentenced under either a mistake of law or a mistake of important material facts which were discovered after sentence and could not by reasonable diligence have been discovered before sentence. His only possible remedy under such facts is either a writ of habeas corpus or a writ of coram nobis.* Habeas corpus lies to correct void or illegal sentences or an illegal detention: *Com. ex rel. Milewski v. Ashe*, 362 Pa. 48, 66 A. 2d 281; *Com. v. Ketner*, 92 Pa. 372; *Com. v. Morgan*, 278 Pa. 395, 123 A. 337; *Com. v. Curry*, 285 Pa. 289, 132 A. 370; *Com. ex rel. Di Giacomo v. Heston*, 292 Pa. 63, 140 A. 533; *Halderman's Petition*, 276 Pa. 1, 119 A. 735; *Com. ex rel. Stanton v. Francies*,

---

* For scope of writ of coram nobis, see 24 C.J.S., Criminal Law, §1606, p. 143 et seq.; Maurer's Notes on Pennsylvania Criminal Law & Procedure, Vol. 1, p. 265.

250 Pa. 350, 95 A. 798; *Com. ex rel. v. Smith,* 324 Pa. 73, 187 A. 387; and where the record shows a trial or sentence or plea which was so fundamentally unfair as to amount to a denial of due process or other constitutional rights of the accused, habeas corpus will lie: *Palmer v. Ashe, Warden,* 342 U. S. 134; *Townsend v. Burke,* 334 U. S., supra; *Waley v. Johnston,* 316 U. S. 101; *Smith v. O'Grady,* 312 U. S. 329; *Mooney v. Holohan,* 294 U. S. 103; *Moore v. Dempsey,* 261 U. S. 86; *Bram v. U. S.,* 168 U. S. 532, 543; *Chambers v. Florida,* 309 U. S. 227; *Com. ex rel. Sheeler v. Burke,* 367 Pa. 152, 79 A. 2d 654.**

In the light of these decisions,*** we hold that habeas corpus will lie, if the Court has imposed a sentence on the basis of facts or assumptions concerning defendant's criminal or psychiatric or psychological record which were materially untrue and which cannot be justified upon the record and which defendant had no reasonable means or opportunity to call to the Court's attention. As will hereinafter more fully appear, there are no facts of record which entitle petitioner to a hearing or to a review or change of his sentence.

The next important contention is that of the Relator who contends that the Court below had no right to dismiss or deny the petition for a writ of habeas corpus without a hearing. There is no merit in this contention. Where the petition or application itself, or where the record upon which it is based, or both together, fail to clearly make out a case entitling a re-

---

** As to violation of due process, cf. also: *Watts v. Indiana,* 338 U. S. 49; *Turner v. Pennsylvania,* 338 U. S. 62; *Harris v. South Carolina,* 338 U. S. 68.

*** See also opinion of Mr. Justice JACKSON in *Brown v. Allen,* 344 U. S. 443; *U. S. ex rel. Innes v. Hiatt,* 141 F. 2d 664, 665-6; *Com. v. Shupp,* 365 Pa. 439, 441, 75 A. 2d 587.

lator to the relief afforded by habeas corpus, a hearing is not necessary.* Cf. *Com. ex rel. Milewski v. Ashe,* 362 Pa., supra; *Com. ex rel. Chambers v. Claudy,* 171 Pa. Superior Ct. 115, 90 A. 2d 383; *Com. ex rel. Rogers v. Claudy,* 170 Pa. Superior Ct. 639, 90 A. 2d 382; *Com. ex rel. DePoe v. Ashe,* 167 Pa. Superior Ct. 23, 74 A. 2d 767; Act of May 25, 1951, P. L. 415, §4, 12 PS 1904.

The recent case of *U. S. ex rel. Smith v. Baldi,* 344 U. S. 561, supra, lends no support to relator's main contention that this Court or the sentencing Court should reopen his case and reduce the sentence from death to life imprisonment because of that Court's reliance upon the report of Dr. Drayton who ten months later became mentally incapacitated. In the *Smith* case defendant relied, as does this defendant, upon Dr. Drayton's alleged incapacity. In that case Dr. Drayton testified on September 21, 1948, that Smith was sane at the time he committed the murder in January 1948. On October 28th and November 5, 1948, defense counsel introduced evidence tending to show that Smith was insane. After a consideration of all the evidence the sentencing Court on February 4, 1949, sentenced Smith to death. The conviction and sentence were affirmed by this Court in *Com. v. Smith,* 362 Pa. 222, 66 A. 2d 764. Thereafter Smith filed several (successive) petitions for a writ of habeas corpus in the United States District Court, one of which was recently heard and decided by the Supreme Court of the United States. Smith alleged he was denied due process because the Commonwealth of Pennsylvania should first have formally adjudicated the question of his mental compe-

---

* By way of caution we may add that when a petition for a writ of habeas corpus has been presented and the Court directs the writ to issue or allows a rule to show cause why the writ should not be issued, a hearing is necessary: Act of May 25, 1951, P. L. 415, §§4, 5.

tency before allowing him to plead guilty; and secondly, he should have been afforded the technical services of a psychiatrist before pleading at all to a capital offense; and thirdly, the incompetence of Dr. Drayton amounted to a denial of due process. These contentions were rejected by the Supreme Court of the United States and the appeal was dismissed. That case is a far stronger case for the defendant than the instant one since in the instant case defendant and his attorney and Dr. Moore, his psychiatrist, as well as Dr. Drayton, the Commonwealth's psychiatrist, and all the prior history of the defendant agree that the defendant was sane, but was a moron or mentally deficient.* There is, therefore, no reason or justification for granting the writ in this case, or holding that the failure to review the death penalty which the sentencing Court had imposed constituted an abuse of discretion or a denial of due process.

It may not be amiss to add that, irrespective of any technicalities, if we believed that the sentencing Court was misguided by Dr. Drayton's testimony and that it imposed its sentence upon an erroneous state of assumptions or material facts which guided or controlled its decision, we would grant the writ in accordance with the principle of *Townsend v. Burke,* 334 U. S., supra. But it is obvious from the summary dismissal of the present application for habeas corpus, together with

---

* Dr. Moore, whose affidavit was attached to and made a part of the record in the present case, said in his letter to defendant's counsel dated October 17, 1952: "After reviewing the detailed evidence in the record I must agree with the unanimous opinions rendered by the highly competent psychiatrists and neurologists to the effect that Elliott was indeed mentally deficient, a middle grade moron, . . . . His [Dr. Drayton's] report is essentially in accord with the conclusions reached by all the psychiatrists who had examined him."

the prior opinion of the sentencing Court which we quoted at some length in *Com. v. Elliott*, 371 Pa., supra, that there is no reason or basis for a further review of Elliott's sentence by the lower Court or by this Court.*

Order affirmed.

Mr. Justice JONES concurs in the result.

---

* Counsel for defendant avers that the Board of Pardons "in the instant case stated it would not alter the sentence here because it felt . . . that such action in effect would overrule the highest Court of the State." We believe counsel must have misunderstood the Board's position. The province of the Board of Pardons is to consider not only all the facts pertaining to the crime, as disclosed in the Opinion and decision of the Court, but also and equally important, any and all extenuating circumstances. The Board of Pardons is primarily a tribunal of *clemency*; and by recommending to the Governor of Pennsylvania the reduction or commutation of a sentence or the grant of a pardon, the Board of Pardons does not overrule a Court, but because of equitable or extenuating circumstances, recommends clemency. The Board's recommendation seldom, if ever, is based upon the legal principles or technicalities of the law upon which the Court's decision is necessarily based. Pursuant to the Act of April 24, 1931, P. L. 71, the Board of Pardons requests every trial Judge to briefly state in writing the facts of the crime, the extenuating circumstances, if any, and equally important, his recommendations with respect to the defendant's application, as well as the reasons for his recommendation. On at least one occasion a former Chief Justice of this Court recommended to the Board, clemency for a petitioner whose conviction of first degree murder and sentence of death had been sustained by this Court. The Board of Pardons has always welcomed recommendations not only from Judges conversant with the case, as well as district attorneys and prison authorities, but also from private citizens who may be familiar with the defendant and his past or present history or his repentence and future rehabilitation.