Commonwealth ex rel. Murray *v.* Keenan (et al., Appellant).

Argued November 19, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*William Claney Smith*, Assistant District Attorney, with him *Edward C. Boyle*, District Attorney, for appellant.

*Marjorie Hanson Matson*, for appellee.

OPINION BY WOODSIDE, J., April 16, 1958:

William J. Murray was convicted by a jury of violating the Narcotics Act of July 11, 1917, P. L. 758, as amended, 35 PS §851 et seq. and on April 12, 1956, was sentenced by the Court of Quarter Sessions of Allegheny County to five years in the Allegheny County Workhouse. He did not appeal.

October 30, 1956, he filed a petition for a writ of habeas corpus in the Court of Common Pleas of Allegheny County, which petitions he later amended. That

court, after considering the matter on the amended petition and an answer filed by the district attorney, ordered that a new trial be granted in the quarter sessions case. The district attorney appealed.

A writ of habeas corpus is not a substitute for an appeal, or for a writ of error, or for a motion for a new trial, or for the correction of trial errors. *Commonwealth ex rel. DeSimone v. Maroney*, 179 Pa. Superior Ct. 300, 303, 116 A. 2d 747 (1955); *Commonwealth ex rel. Garrison v. Burke*, 378 Pa. 344, 347, 106 A. 2d 587 (1954); *Commonwealth ex rel. Elliott v. Baldi*, 373 Pa. 489, 493, 96 A. 2d 122 (1953). See also *Sunal v. Large*, 332 U. S. 174 (1947).

This has probably been the most repeated rule of law to be found in the reports of the Appellate Courts of this Commonwealth during the past decade.[1] It is not only designed to bring about orderly practice in

---

[1] In addition to the above cited cases the following are a few of the many recent cases so holding: *Commonwealth ex rel. Colwell v. Myers*, 182 Pa. Superior Ct. 256, 126 A. 2d 513 (1956); *Commonwealth ex rel. Simcox v. Johnston*, 182 Pa. Superior Ct. 407, 127 A. 2d 790 (1956); *Commonwealth ex rel. Thompson v. Day*, 182 Pa. Superior Ct. 644, 128 A. 2d 133 (1956); *Commonwealth ex rel. Pierce v. Martin*, 183 Pa. Superior Ct. 272, 130 A. 2d 727 (1957); *Commonwealth ex rel. Sharpe v. Burke*, 174 Pa. Superior Ct. 350, 101 A. 2d 397 (1953); *Commonwealth ex rel. Koffel v. Myers*, 184 Pa. Superior Ct. 270, 133 A. 2d 570 (1957); *Commonwealth ex rel. Marelia v. Burke*, 366 Pa. 124, 75 A. 2d 593 (1950); *Commonwealth ex rel. Pickwell v. Burke*, 372 Pa. 450, 93 A. 2d 482 (1953); *Commonwealth ex rel. Matthews v. Day*, 381 Pa. 617, 114 A. 2d 122 (1955); *Commonwealth v. Mackley*, 175 Pa. Superior Ct. 304, 104 A. 2d 169 (1954), affirmed in 380 Pa. 70, 76, 110 A. 2d 172 (1955). See also *Commonwealth ex rel. Penland v. Ashe*, 341 Pa. 337, 19 A. 2d 464 (1941). In nearly all of these cases the Supreme Court of the United States refused petitions for writs of certiorari, but this cannot be considered as an expression of opinion on the merits by that Court. See *Brown v. Allen*, 344 U. S. 443, 488, 497 (1953).

the courts (although it does this), but it is also designed to promote justice by requiring that the trial be examined for errors within a time when witnesses and participants in the trial are available, and their recollections of both the trial and the offense charged are not dimmed by the passing of time. An accused should not be allowed to wait until the Commonwealth's witnesses have vanished or become ineffective through fading memories before challenging the fairness of his trial. Particularly is this true when the defendant has been represented by counsel at the trial, as the petitioner was in this case. *Commonwealth ex rel. Smith v. Ashe,* 364 Pa. 93, 101 to 103, 71 A. 2d 107 (1950).

The legislature has limited the time within which an appeal must be taken, and when an appeal is not taken within that period this Court is obligated to quash it. *Commonwealth v. Mackley,* 175 Pa. Superior Ct. 304, 104 A. 2d 169 (1954); *Commonwealth v. Wynn,* 175 Pa. Superior Ct. 546, 106 A. 2d 647 (1954); *Commonwealth v. LeGrand,* 336 Pa. 511, 9 A. 2d 896 (1939); *Commonwealth v. Mackley,* 380 Pa. 70, 76, 110 A. 2d 172 (1955). If the courts were to nullify this legislation by reviewing a trial upon a writ of habeas corpus in the same manner that they would review it upon appeal, their actions would be an unwarranted usurpation of legislative power.

If this often repeated rule has *any* meaning, then there must be cases where there are errors which would have entitled the defendant to a new trial if before us on appeal from the sentence but which are not properly before us for consideration on a petition for a writ of habeas corpus. This may be such a case.

In a habeas corpus proceeding relator cannot question the sufficiency of the evidence or the adequacy of the court's charge at the trial. *Commonwealth ex rel.*

*Gobert v. Myers,* 182 Pa. Superior Ct. 254, 126 A. 2d 525 (1956).

The Supreme Court said in *Halderman's Petition,* 276 Pa. 1, 2, 119 A. 735 (1923) : "Except in unusual cases, where the proceeding has been adopted in furtherance of the prompt administration of justice (e.g. Commonwealth v. Shortall, 206 Pa. 165), the writ of habeas corpus can be effectively invoked here by one convicted of crime only where it appears the sentencing court was without jurisdiction. (Com. v. Ketner, 92 Pa. 372), where the record shows no crime was committed, or the passing of an illegal sentence (Haldermen's Case, 53 Pa. Superior Ct. 554), or where there is an improper detention of the relator after the expiration of his term of imprisonment by lapse of time or pardon."

However, this limit of jurisdiction in habeas corpus cases has been expanded. In *Commonwealth ex rel. Elliott v. Baldi,* supra, 373 Pa. 489, 493, 96 A. 2d 122 (1953), Justice BELL, speaking for the Court said: ". . . the recent tendency of Courts, especially the Supreme Court of the United States, has been to relax (the above) general rule and to widen the scope of due process and allow a writ of habeas corpus when the interests of justice imperatively require it." See also *Commonwealth ex rel. Garrison v. Burke,* supra.

Our Court has held for some time that there are certain errors which may be corrected on habeas corpus, even though the defendant failed to appeal from the judgment, such as where an illegal sentence has been imposed. *Commonwealth ex rel. Schultz v. Smith,* 139 Pa. Superior Ct. 357, 367, 11 A. 2d 656 (1940).

But, if, as we have said, the adequacy of the court's charge cannot be questioned by a writ of habeas corpus, then it would seem that we have no need to even look at the charge. Assuming, however, that we should ex-

amine it upon a writ of habeas corpus, such examination certainly should be limited to determining whether there are any glaring errors which shock the conscience of the Court and demonstrate such gross unfairness that to keep the prisoner incarcerated would be patently unjust. The errors would have to be such as to impel an abiding conviction that the trial was clearly lacking in the basic elements of fairness and, in addition, that the conviction would not have resulted except for the errors. This is something more than "fundamental error" as the term is used for the purpose of considering the propriety of granting a new trial. Otherwise habeas corpus could be used as a substitute for an appeal. See Judge MILNER's well considered opinion on this subject in *Commonwealth ex rel. Cavallucci v. Burke,* 84 Pa. D. & C. 449 (1952); *Commonwealth v. Mackley,* supra, 380 Pa. 70, 76.

The complaint here is that the trial judge did not clearly define to the jury the offense with which the defendant was charged, and the defendant may have been convicted of an offense for which he was not indicted. He was, however, indicted for illegally obtaining narcotic drugs and it was of this offense that the jury found him guilty.

The Act of July 11, 1917, P. L. 758, as amended, under which the defendant was prosecuted, contains numerous prohibitions relating to drugs which were made punishable under section 12, 35 PS §865.

Section 4 of the Act (35 PS §854) provides that "No person shall have in his possession or under his control, or deal in, dispense, sell, deliver, distribute, prescribe, traffic in, or give away, any of the (drugs defined in the Act)."

Among the prohibitions in section 8 (35 PS §860) is the following: "No person shall obtain, or attempt to obtain, a narcotic drug, or procure, or attempt to

procure, the administration of a narcotic drug: (a) by fraud, deceit, misrepresentation, or subterfuge; or (b) by the forgery or alteration of a prescription, or of any written order . . ."

The answer to the petition for the writ of habeas corpus admits the allegation in the petition that "Pursuant to [section 8, supra] the indictment against the petitioner charged that he '. . . unlawfully and feloniously did obtain from one Abe Scherr a duly registered pharmacist doing business as Fannings Drug Store, a narcotic drug, to-wit; 12 tablets of $\frac{1}{4}$ grain morphine sulphate, each, by fraud, deceit, misrepresentation and subterfuge, that is to say, by presenting to the said Abe Scherr . . . a prescription authorizing the sale of said narcotic drugs, to which prescriptions, he the said William J. Murray had theretofore forged the name of one E. S. Simms.' "

It is the contention of the petitioner that because of the deficiencies in the charge the jury may have found him guilty of illegal "possession" of the narcotic drugs, made an offense under section 4, while he was indicted for illegally "obtaining" the drugs, made an offense under section 8.

"Obtain" means "to get hold of by effort," "to get possession of," or "to have in possession." *Commonwealth v. Schmunk*, 207 Pa. 544, 546, 56 A. 1088 (1904).

In his charge, the trial judge first referred to the indictment against the defendant by saying that ". . . the defendant is alleged to have procured by some manner of means the blank prescription forms from a Dr. Simms' office, and through the aid and assistance of Nancy Davis, illegally obtained a narcotic, or habit forming drug." He then referred to the fact that the statute prohibits possession and dealing in and obtaining of narcotics under certain circumstances and then said: "It is illegal in Pennsylvania to even possess

them. And that is what this defendant is charged with in these indictments of. On these three particular dates he procured and got into his possession these tablets of morphine and that he had no authority to have them because he did not have a proper prescription from a doctor."

What the court there was saying, clumsily to be sure, was that the defendant was charged with procuring the morphine on the three dates without having a proper prescription from a doctor.

The trial judge further charged: "The whole point of this case is that this defendant did obtain on three separate dates certain morphine tablets . . . and that he had no legal authority to have them in his possession."

The court also reviewed the testimony that the defendant "somehow procured these prescription blanks . . . that Nancy Davis had the prescriptions filled, and delivered the parcels to the defendant and upon receipt of them, he was then violating the law of Pennsylvania by having in his possession illegally, and without any proper authority, this morphine." . . .

And further said, "If you . . . (are satisfied) beyond a reasonable doubt that that is exactly what happened, that this defendant did obtain this morphine in this manner as contended for by the Commonwealth, your verdict would simply be . . . guilty." Again he stated that if the jury was convinced "beyond a reasonable doubt that this defendant did on the dates set forth in the indictment have in his possession these narcotic habit forming drugs, and that he did not have a proper prescription for them."

The trial judge asked defendant's counsel whether he had any additions or corrections to suggest in connection with his charge, and then stated to defense counsel that he saw him talking to the defendant.

After this statement by the trial judge there was an unrecorded conference at side-bar followed by a charge relating to possession in this language: ". . . there is no direct evidence or testimony here of any witness to the effect that the defendant ever had in his possession any narcotic drug. But we do have the testimony of Nancy Davis, that on several occasions she delivered the prescription to the druggist, the prescriptions were filled, the druggist testified that he filled the prescriptions with morphine, and that she then delivered the package to the defendant and he paid for it. . . . you must be satisfied from her testimony that he did so have it in his possession."

On several occasions, both before and after this, the court made reference to the defendant's "possession" of a narcotic drug. The trial judge did refer to the fact that possession of drugs under certain circumstances is a violation of the law, but there are indications that the court was treating "possession" as one of the elements of "obtaining" the drug, which indeed it is. The petition for the writ of habeas corpus sets forth that when the defendant was arrested and searched, no drugs were found on him. Apparently the petitioner believes that the weak spot in the Commonwealth's case revolved around the "possession" of the drugs, rather than the occurrences connected with the "getting" of them. Although the testimony of the trial is not before us,[2] we gather from the petition and the charge that the only evidence of "possession" was the testimony of a witness who said she "delivered" the drugs to the defendant.

In order to convict the defendant of "obtaining" the drugs it was necessary for the jury to find he had "possession" of them, but we do not see how it would

---

[2] It would be on appeal.

have been possible, under the charge and the evidence (as we understand the evidence to be), for the jury to have brought in a verdict of guilty if it thought the defendant had "possession" of the drugs in violation of sec. 4 but had not "obtained" them in violation of sec. 8.

The charge left much to be desired, but in whatever respects it was confusing or inaccurate, it could have been clarified on suggestion of defendant's counsel who was invited by the trial judge at the time to offer suggestions.

In our opinion the deficiencies in the charge do not represent the type of error which warrants the granting of a writ of habeas corpus. We see no reason why we should, at this time and in this manner, permit the directing of a new trial.

Judgment reversed, and the writ is dismissed.