# Commonwealth ex rel. LaRue, Appellant, *v.* Rundle.

Submitted November 13, 1964. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Alphonso LaRue,* appellant, in propria persona.

*Alfred J. DiBona, Jr.* and *Joseph M. Smith,* Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for appellee.

OPINION BY MR. JUSTICE ROBERTS, March 16, 1965:

After a jury trial, Alphonso LaRue was found guilty of murder in the first degree and the jury fixed the penalty at death. The conviction was appealed to this Court and affirmed. *Commonwealth v. LaRue,* 381 Pa. 113, 112 A. 2d 362 (1955). The facts relating to the offense are recited in full in that opinion. Shortly thereafter, in 1955, the Board of Pardons commuted the sentence to life imprisonment. LaRue is presently confined under this sentence and in 1964 he sought release by means of a petition for habeas corpus. The petition was denied, without hearing, and this appeal followed.

The petition may be fairly characterized as urging three contentions in support of the request for a writ. We find no merit in any of these arguments.

Appellant-petitioner first contends that since he had no counsel at his preliminary hearing or at the coroner's inquest, he is entitled to release. The contention is without merit. We have had occasion to face

this question frequently in recent months. Our holding has consistently been that, in the absence of unusual circumstances which transform the proceedings into a critical stage, lack of counsel at preliminary hearing or coroner's inquest in this Commonwealth does not constitute a deprivation of due process. E.g., *Commonwealth ex rel. Butler v. Rundle*, 416 Pa. 321, 206 A. 2d 283 (1965) (preliminary hearing); *Commonwealth ex rel. Linde v. Maroney*, 416 Pa. 331, 206 A. 2d 288 (1965) (preliminary hearing and coroner's inquest); *Commonwealth ex rel. Maisenhelder v. Rundle*, 414 Pa. 11, 198 A. 2d 565 (1964) (preliminary hearing). In the present case, there are no circumstances whatever suggesting basic unfairness. Petitioner alleges no facts suggesting any unfairness and our review of the record reveals nothing which would remove this case from the general rule.

A second allegation is that Commonwealth witnesses conspired to and did commit perjury. The allegedly perjured testimony related to the number, extent and placement of stab wounds suffered by the victim. (Petitioner, at trial, hypothesized that the victim had committed suicide.) The only evidence, properly received, as the complete account of the victim's wounds, was presented by the coroner's physician who testified that he had observed approximately twelve stab wounds in both the front and back of the victim. Petitioner's position is that the physician did not tell the truth because, according to petitioner, the earlier reports, charts and diagrams prepared by the police revealed a lesser number of wounds, none of which appeared in the victim's back. Certainly there is nothing in the record lending support or even slight credibility to the allegation that the physician's testimony was perjured or that the truth was in any way suppressed. At trial, the physician's testimony was somewhat disputed by part of petitioner's testimony. Petitioner tes-

tified as to what he believed to be the content of pretrial police reports. The dispute was therefore raised for the jury to consider and, at best, the question went mainly to the weight of the evidence.

Furthermore, even if a variance between the physician's testimony and the police report was shown to exist, the question of its importance would remain. It does not appear that the police ever attempted to make a complete, comprehensive and final determination of the extent and number of stab wounds in preparing their report. And, of course, that function lay basically with the medical authorities. Even assuming a discrepancy between the police investigatory charts and reports, the importance of this fact was for the jury.

Moreover, petitioner alleges no facts whatever in support of the alleged intentional fabrication or suppression of truth except his belief that the discrepancy described above existed. He merely urges that his belief as to what the police charts contain lead to the conclusion that the physician's differing testimony was perjured. We conclude, therefore, that this allegation entitles petitioner neither to a writ nor to a hearing.

Petitioner's final attack on the validity of his conviction is based on allegations that his two appointed counsel, who appealed the judgment of conviction to this Court and who successfully represented him before the Board of Pardons, did not render effective assistance at trial.

To support the issuance of a writ of habeas corpus on an allegation of ineffective assistance of counsel, it must be found that counsel's conduct amounted to a denial of due process of law. *Commonwealth ex rel. Wherry v. Maroney,* 201 Pa. Superior Ct. 441, 447, 193 A. 2d 839, 841-42 (1963), allocatur denied, 201 Pa. Superior Ct. xxvii; *Commonwealth ex rel. Schenck v. Banmiller,* 190 Pa. Superior Ct. 467, 154 A. 2d 320 (1959),

allocatur denied, 190 Pa. Superior Ct. xxvi, cert. denied, 363 U.S. 847, 80 S. Ct. 1623 (1960). The mere fact that petitioner is of the opinion that his trial was improperly conducted by his counsel does not constitute grounds for the issuance of a writ. *Commonwealth ex rel. Schenck v. Banmiller,* supra; *Commonwealth ex rel. Comer v. Maroney,* 178 Pa. Superior Ct. 633, 638, 116 A. 2d 301, 304 (1955), allocatur denied, 179 Pa. Superior Ct. xxviii. See also *Commonwealth ex rel. Garrison v. Burke,* 378 Pa. 344, 349-50, 106 A. 2d 587, 590, cert. denied, 348 U.S. 879, 75 S. Ct. 120 (1954); *United States ex rel. Wilkins v. Banmiller,* 205 F. Supp. 123, 128 n.4 (E.D. Pa. 1962).

The first facet of petitioner's attack on the competency of his counsel is that counsel did not present evidence at trial establishing prior suicide attempts by the victim and that counsel did not obtain an order to exhume the body. In part, petitioner's testimony at trial was that the victim had made attempts to take her own life. The Commonwealth did not dispute the fact that the victim had done so and the absence of further attempts by defense counsel to corroborate this testimony by the defendant, the truth of which was already admitted to the jury, can hardly, by any reasoning, be deemed to even suggest ineffective assistance on the part of counsel. Similarly, the fact that counsel did not seek an exhumation order can scarcely be deemed ineffective assistance.[1]

The second aspect of petitioner's attack on counsel is based on their alleged failure to "strenuously oppose the conflicting evidence." A reading of the petition shows that the sole basis of this complaint is petition-

---

[1] The record seems to show that, in spite of defendant's conjectures and suggestions, the evidence introduced at trial persuasively and convincingly indicate that the death was a homicide and not a suicide. The jury obviously so concluded and the record facts appear to be overwhelmingly free from doubt.

er's present attitude that the case should have been tried with a different style or method. As we have noted, this attitude is insufficient to support the contention advanced. In fact, our reading of the transcript indicates that there is no substantial basis whatever in support of the argument that counsel's assistance was constitutionally ineffective.

Surely, the test for determining whether counsel's assistance was constitutionally ineffective may not be predicated on so unsubstantial a standard as the subjective preference of the accused. Nothing could be more unsatisfactory as a means of acceptable, professional competence than the convicted defendant's evaluation of the trial skill, judgment and efforts of counsel exerted in his behalf. The right to counsel and the effective assistance of counsel does not vest the petitioner with the absolute privilege of retroactively assessing the quality of his counsel's trial representation against his present feeling as to what might have been better strategy. Only one test could evolve if such were the standard: Was the accused acquitted? And, of course, if that were the test it would never be used because there would be no need for appeal.

The fair and proper administration of justice mandates that the right to the effective assistance of counsel may not be founded on so unsound and unrealistic a concept of the traditional counsel-client relationship. While all efforts should and must be directed towards the constant improvement of the quality of defense representation, caution must be exercised not to destroy in the process that which long experience teaches should be maintained. There is obvious danger in permitting or encouraging the criminally convicted to center unwarranted attacks upon counsel rather than on the merits of the case. It may be said without exaggeration that such attacks may well discourage trial lawyers from undertaking the defense in criminal litiga-

tion. Were this to occur, it would be most detrimental to the current efforts being made to improve, expand and to make generally available the highest quality of defense representation attainable so that our criminal trials may be conducted with the utmost possible fairness. In that event, not only the criminal trial bar would suffer, but perhaps even more importantly, the greatest harm would necessarily fall upon those accused of crime. This the proper administration of criminal justice seeks to avoid.

Order affirmed.