Commonwealth ex rel. Davis, Appellant, v.
Maroney.

Argued April 13, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

H. *David Rothman,* with him *K. Leroy Irvis,* for appellant.

*Edwin J. Martin,* Assistant District Attorney, with him *Robert W. Duggan,* District Attorney, for appellee.

OPINION BY JACOBS, J., June 17, 1965:

In October, 1960, relator was tried under nine indictments charging burglary and either rape or assault with intent to ravish. The offenses all took place in the same area of Pittsburgh in which relator resided, all were between 4 and 6 a.m. and eight of the nine took place within the seven week period prior to relator's arrest. At trial relator was represented by a member of the Bar of Allegheny County appointed by the court. Counsel was also a member of the Legal Aid Society. The jury, after three days of trial, found relator guilty on all nine indictments. He was sentenced to an aggregate term of imprisonment of 40 to 80 years. In November, 1964, his petition for writ of habeas corpus was denied without hearing. This appeal followed.

In his argument relator seeks the writ on three basic grounds: (1) Ineffective assistance of counsel; (2) "fundamental error" in trying nine felony indictments in one trial; and (3) "fundamental error" in the failure of the court to give a cautionary instruction on the issue of identification testimony.

We find no error in the denial of the writ without a hearing.

From the numerous habeas corpus cases recently decided by this court and the Supreme Court of Pennsylvania certain principles have clearly emerged. One is that a hearing on a habeas corpus petition is not necessary where the petition or the record or both fail to make out a case or where no factual issues require determination. *Commonwealth ex rel. Simcox v. Johnston,* 182 Pa. Superior Ct. 407, cert. denied 355 U.S. 933; *Commonwealth ex rel. Whalen v. Banmiller,* 193 Pa. Superior Ct. 554; *Commonwealth ex rel. Holben v. Russell,* 418 Pa. 22. In this case, a hearing would serve no useful purpose since relator's contentions can all be decided by reading the record. Another well-established principle is that the writ of habeas corpus is not a substitute for an appeal. *Commonwealth ex rel. Wilkins v. Banmiller,* 401 Pa. 347; *Commonwealth ex rel. Kennedy v. Myers,* 393 Pa. 535. When a judgment of conviction is collaterally attacked in a habeas corpus proceeding, the relator must clearly establish that due process was denied. *Commonwealth ex rel. Storch v. Maroney,* 416 Pa. 55. Guided by these principles, we will consider each of relator's allegations.

First is his contention that his trial counsel was so ineffective as to amount to a violation of his constitutional right to counsel. Six arguments are advanced in support of this contention. Two of these, failure to request a severance and failure to request a cautionary charge on identification testimony, are the basis of relator's other two contentions and will be discussed later in the opinion. The other four are: ignorance of the facts and lack of preparation, refusal to let relator testify, failure to exercise challenges on voir dire, and failure to move to withdraw a juror when the prose-

cuting attorney allegedly made some berating remarks about the defense attorney.[1]

Before an allegation that trial counsel was ineffective will support the issuance of a writ of habeas corpus, it must be found that counsel's conduct amounted to a denial of due process of law. *Commonwealth ex rel. Wherry v. Maroney,* 201 Pa. Superior Ct. 441, 447, allocatur denied; *Commonwealth ex rel. LaRue v. Rundle,* 417 Pa. 383. As Justice ROBERTS stated in *La-Rue,* supra: "The right to counsel and the effective assistance of counsel does not vest the petitioner with the absolute privilege of retroactively assessing the quality of his counsel's trial representation against his present feeling as to what might have been better strategy."

Our examination of the transcript leads us to conclude that relator's trial counsel, from the Legal Aid Society, did a commendable job in light of the strength of the Commonwealth's evidence. As relator admits, the sole issue in all the offenses was identification. Each of the victims had previously identified the relator in a line-up. Each was positive at trial a few months after the attacks that the relator was the man who attacked her. It is likely that the victim of a rape will long remember her attacker particularly when he was undisguised at such close contact. Despite the conclusiveness of each victim's recollection, defense counsel spent much time on cross-examination, attempting to weaken each woman's testimony and to introduce the defense of consent. He was unsuccessful.

The effectiveness of a trial lawyer cannot be measured by the length of time spent in preparation. A case lacking in legal complexities, as this one was, does

---

[1] We note that that portion of relator's statement of the questions involving counsel's alleged failure to call some unnamed witnesses is not argued in the brief prepared by relator's present counsel. It appears that this was dropped as being unsupportable.

not demand lengthy pre-trial research, study or investigation. In this case counsel and defendant were together for jury selection and for some time before that. A court holiday after the first day of trial, before the Commonwealth had presented half its case, provided counsel with ample opportunity to complete whatever non-courtroom preparation was needed. We have found five minutes of preparation to be sufficient to refute an allegation of inadequate preparation. *Commonwealth ex rel. Dion v. Tees,* 180 Pa. Superior Ct. 82. There is no basis for relator's allegation that his counsel was ineffective due to lack of preparation and there was no reason for counsel to ask for a postponement to prepare.

The allegation of ineffectiveness of counsel in refusing to let relator take the stand is equally devoid of merit. We will not superimpose our collective judgment upon that of trial counsel who has evaluated his client and his jury on so tactical a decision as to whether or not to let a defendant testify. There are numerous reasons why a defense lawyer chooses to keep his client off the witness stand. A defendant's demeanor, a possible prior criminal record, lack of intelligence, a particularly effective prosecuting attorney are some considerations that must be placed on the scales when a defense attorney is weighing this crucial strategic decision. Second-guessing on this matter by a disappointed defendant five years later is to be discouraged lest members of the bar become reluctant to represent indigent defendants for fear of future unwarranted attack.

Failure to exercise challenges on voir dire is no indication that relator's counsel was ineffective, even if such allegation could be proved. This again was a matter to be determined by counsel in the exercise of his professional judgment. We also reject this argument because even if true, relator has alleged no preju-

dice. Furthermore, in this case the record shows that relator was present with his counsel when the jury was selected. His complaint is without substance.

Relator also argues that failure of his counsel to object to alleged inflammatory remarks by the prosecutor in his closing address indicates ineffective representation. The utterance of such remarks was refuted by the trial judge who stated in his opinion dismissing the petition that he could recall no such remarks and that if any had been made he would have commented on them. The language of Justice EAGEN in *Commonwealth ex rel. Storch v. Maroney*, supra, at 60, is applicable here, "the present contention bears all the earmarks of an afterthought to which one can give little credence."

The preceding three criticisms of trial counsel by relator consist of alleged errors of professional judgment and trial strategy. Since it is the right and duty of defense counsel to present his case in a manner which he deems will be most advantageous to his client, such errors of judgment, if they are errors, are not grounds for a new trial unless they involve a denial of due process and cause manifest injustice. *Commonwealth v. Tyson*, 194 Pa. Superior Ct. 593. We find neither here.

Relator's contention that fundamental error was committed in the failure to sever the nine indictments for trial has two answers. One is that this objection cannot be raised on habeas corpus. *Commonwealth ex rel. Spencer v. Ashe*, 364 Pa. 442; *Commonwealth ex rel. Haines v. Burke*, 173 Pa. Superior Ct. 477. In light of relator's first contention that his trial counsel was inadequate,[2] the second answer to this argument is also pertinent. It is well-established that consolida-

---

[2] However, he does not allege that his counsel should have taken an appeal where the consolidation issue could have been raised.

tion of indictments charging separate and distinct offenses is within the sound discretion of the trial judge and where the indictments are closely related such consolidation is not grounds for reversal unless it clearly appears that the defendant was prejudiced thereby. *Commonwealth v. Patrick,* 416 Pa. 437, 445; *Commonwealth v. Krzesniak,* 180 Pa. Superior Ct. 560, 567. Relator, through his present retained counsel, seems to argue that the mere fact that he was convicted on all nine indictments is a clear indication of prejudice. We cannot agree. A careful study of the transcript shows that not a single evidentiary problem resulted from the consolidation; each of the nine victims stated succinctly and plainly in her own language what had happened to her. Each positively identified the relator at a line-up, by means of separate, secret slips, and at trial. Each of the assaults occurred within two or three blocks of one another in relator's neighborhood, and eight of the nine occurred within six weeks of one another, the ninth occurring two months prior to those eight. No new or extraneous element was introduced into the case because of the multiple indictments. As relator himself admits, the sole issue was identification. We find that the relator was not prejudiced by trial of the indictments together.

The final contention is that fundamental error was committed in the failure of the court to give a cautionary instruction on the issue of identification testimony. Complaints about the charge of the court clearly are matters for appeal. *Commonwealth ex rel. Murray v. Keenan,* 186 Pa. Superior Ct. 107. However, since relator also contends that he was denied effective counsel in that his trial attorney failed to request such a charge, we shall examine this allegation. In doing so on a petition for habeas corpus we are limited to "determining whether there are any glaring errors which shock the conscience of the court and demon-

strate such gross unfairness that to keep the prisoner incarcerated would be patently unjust. The errors would have to be such as to impel an abiding conviction that the trial was clearly lacking in the basic elements of fairness and, in addition, that the conviction would not have resulted except for the errors. This is something more than 'fundamental error' as the term is used for the purpose of considering the propriety of granting a new trial." *Murray*, supra, at 112.

Our consideration of the record convinces us that a cautionary charge was not required by the facts. This charge should be given only where the witness is not in a position to clearly observe the assailant, or is not positive as to identity, or the witness' positive statements of identity are weakened by qualification or by prior failure to identify. *Commonwealth v. Kloiber*, 378 Pa. 412, 424. Identification testimony in this case was clear, unequivocal and unshaken and failure to give a cautionary charge would not justify reversal on appeal. Much less would it justify the issuance of a writ of habeas corpus.

Order affirmed.

---

CONCURRING OPINION BY HOFFMAN, J.:

I join in the opinion of the majority and find that it accurately applies the prior holdings of both our court and the Supreme Court to the facts in this case.

I have become increasingly disturbed, however, by the growing trend in our courts to consolidate separate and distinct bills of indictment and try a defendant on them at one trial. Thus, in the instant case, appellant was tried on no less than nine separate charges of burglary and either rape or assault with intent to ravish.

"The justification for a liberal rule on joinder of offenses appears to be the economy of a single trial." *Drew v. United States*, 331 F. 2d 85, 88 (1964). This justification seems rather tenuous in the framework of

our judicial system which strives so mightily for the rights of the accused. Nonetheless, we have been very hesitant in reversing the discretionary judgment of the lower courts, despite the potential dangers inherent in this practice.

Despite our liberality, however, I have long felt that the trial courts might themselves see fit to impose a greater self-restraint and, by so doing, guard against the intrusion of prejudice in trials.

In the instant case, for example, each of the nine victims of the terrible crimes testified one after the other. Each described succinctly and plainly what had happened to her. Our majority opinion correctly points out that each of the nine indictments was kept separate for the jury's consideration. On its face, no prejudice appears. But can we be sure of the reaction of the jury to nine such consecutive stories? Was the testimony of each witness truly convincing and sufficient in itself to convict? Or, rather, did the ultimate verdicts represent an amalgam of all of the evidence insofar as it related to one defendant? May we not with reason doubt that this jury, composed of twelve individuals who were not learned in the law, considered separately each of the nine indictments?

Significantly, appellant complains that his attorney was inadequate, since he advised appellant not to testify on his own behalf. The majority opinion correctly points out that we will not attempt to guess at the reasons for counsel's trial stratagems. It is not unreal to suppose, however, that counsel was forced into this position by the joinder of the many indictments. Perhaps counsel would have preferred that appellant testify on some of these charges, if they had been tried separately. It is certainly clear that this practice may often compel an attorney to select a defense which will best accommodate itself to all of the charges joined, rather than allow him to present the best case in defending against each individual charge.

The potentiality of such prejudice to the defendant, a prejudice which is virtually impossible to detect, should be considered fully and carefully by the courts. Without such careful consideration, much of the protection which we seek for the accused in our courts may be lost inadvertently and unknowingly. In making these determinations, judges might do well to bear in mind the statement of HAWKINS, J., in *Queen v. King,* 1 Q.B. 214, 216 (1897) :

". . . I pause here to express my decided opinion that it is a scandal that an accused person should be put to answer such an array of counts containing, as these do, several distinct charges. Though not illegal, it is hardly fair to put a man upon his trial on such an indictment, for it is almost impossible that he should not be grievously prejudiced as regards each one of the charges by the evidence which is being given upon the others."